CASE 8—PETITION ORDINARY TRANSFERRED TO EQUITY—
MARCH 5.

# German National Bank v. Butchers' Hide and Tallow Co.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

1. CORPORATIONS—ULTRA VIRES.—A corporation must account for benefits which it has received under an *ultra vires* transaction. Therefore, where it has used the proceeds of a note in its business it can not escape liability on the note upon the ground that its president had no power to discount the paper.

2. MISTAKES IN THE EXECUTION OF NEGOTIABLE PAPER may always be corrected unless the rights of third parties have intervened. Where a negotiable note, payable at, and discounted by, the German National Bank, was repeatedly renewed, the several renewals being made payable in the same way until the last renewal here sued on, which was made payable at "said bank," the word "said" being by mistake substituted for the words, "German National," as it is manifest that in the contemplation of all the parties the words "said bank" meant the plaintiff, the German National Bank, they will be so read by the court. But if they could not be so read, the mistake, being pleaded and proved, would be corrected, the rights of no third person being involved, the defendants, who were indorsers, having received the proceeds of the note.

German National Bank v. Butchers' Hide and Tallow Co.

O'NEAL & PRYOR AND W. O. HARRIS FOR APPELLANT.

Brief not in record.

T. L. BURNETT, FRANK HAGAN & SON AND LANE & BURNETT FOR APPELLEE.

1. As the Statute of Anne has never been in force in Kentucky, a promissory note to be placed in the State of Kentucky on the footing of a foreign bill of exchange must, in writing, set out an unconditional promise of the maker to pay to the order of the designated payee a sum of money certain at a fixed time at some one of the banks incorporated under the laws of Kentucky, or at some bank organized in Kentucky under a law of the United States, be signed by the maker and before its maturity must be by the payee or his indorsee indorsed to and discounted by one of the above named banks. (Sec. 21, chap. 22, of the Gen. Stats.) Until a note is fully expressed in its essentials in writing it is not the subject of discount, assignment, indorsement or transfer. (Renfro v. Merchants, 83 Ala., 425; Hadens v. Lehman, 83 Ala., 243; Grossman v. May, 68 Md., 244; Tevis v. Young, 1 Met., 197; Scales v. Ashbrook, 1 Met., 361; Hurt v. Harrison, 91 Mo., 418; Cook v. Mutual, 53 Ala., 38; Barclay v. Enochs, 61 Mo., 218; Davis v. Sewing Machine Co., 105 N. Y., 59; Payne v. The Bank, &c., 10 Bush, 177; Gwathmey v. Cliskey, 31 Fed. Rep., 220; Ward v. Grayson, 4 Ky. L. R., 535; Campbell v. Farmers, 10 Bush, 152; Williams v. Obst, 12 Bush, 268.)

2. Mistakes and omissions in the draft of written agreements will not be rectified or corrected, or the written evidence be reformed by the courts, at the instance of those whose negligence occasioned the mischief complained of, and in no instance unless there be clear, direct and positive evidence of the terms of the antecedent agreement, and that by mistake in the subsequent draft of the written evidence and in consequence of the *mutual mistake* of the parties to the agreement some one or more of the terms of the agreement were omitted from the written draft, and in what respects the written draft does not fully express the terms of the antecedent agreement of the parties. (Woolfolk v. The Bank, 10 Bush, 516; Prather v. Weissinger, 10 Bush, 118; McKensie v. Coulston, 8 L. R. Eq. Cases, 375; Shelburn v. Inchiquin, 1 Bro. C. C. 388; Gillespie v. Moore, 2 Johnson Chancery, 585; Fry on Specific Performance, 762; 5 R. I., 479; 6 R. I., 198; 15 Wall., 171; 100 Mass., 382; 17 Johnson, 372; 18 Ill., 492; Fry, 407, 409, 417, 421, 436.)

3. There can be no reformation by the court of the written evidence

of a contract, unless the parties to the contract who would be af-- fected by the reformation are parties to the action, and are be-- fore the court, and one of such parties seeking the reformation. (Pomeroy on Rights and Remedies, sec. 371; Flanders v. McClanahan, 24 Iowa, 426; Pierce v. Fanner, 47 Me., 507; Newman v. Home, &c., 20 Me., 422; Denham v. Bishoff, 47 Ind., 211; Bush v. Hicks, 60 N. Y., 298; Mills v. Buttrick, 4 Col., 123; Haley v. Bagley, `37 Mo., 363.)

4. A bill of exchange is a courier without luggage or baggage, and its face, which must be fully expressed in writing, is its sole and only passport. (Daniels on Negotiable Instruments, sec. 79; 24 Wis., 21; Parsons on Contracts, vol. 3, page 398; 38 Fed. Rep., 298.) The failure to express in writing and on the face of a bill of exchange or a note any one of its essentials dishonors it at once. (1 Met., 197.)

5. A corporation can only be bound by the acts of its officers and agents within the scope of their authority. (Angell on Corporations, 236, 304; Angell & Ames on Corporations, 8 Taylor, 236; Morawetz on Corporations, secs. 537, 581, 591; 37 N. J. L., 98; 1 B. M., 14; 7 J. J. M., 85; 114 N. Y., 487; 85 Tenn., 703; 22 Wis., 198; 7 Daly, 326; Kenton v. Bowman, 85 Ky., 430; Chemical v. Wagner, 14 Ky. L. R. 510; 1 Met. (Ky.), 550, 552; 3 J. J. Mar., 205; 56 Hun, 412; 82 Va., 913; 19 N. Y., 207; 37 N. J. L., 98; 5 Denio, 567.)

6. Officers of a corporation can not waive any of the rights of the corporation without authority so to do from the managing body, or act for the corporation in a matter when, at the same time, they have, or are representing for others, interests hostile to those of the corporation. (Taylor, 636, 642, 628, 612; 18 Ohio, 169; 50 Iowa, 376; 22 Penn. St., 320; 36 Mich., 263; 41 Mich., 169.)

7. The failure of the holder of a bill of exchange without legal excuse therefor to make presentment of and demand payment of the same on the day of its maturity operates as a full, absolute and unconditional discharge and release to the drawer or indorser thereof of any further liability thereon, and a subsequent promise, oral or written, by the drawer or indorser to pay the bill to the holder is void for want of consideration, unless the holder makes it affirmatively appear that at the time of such subsequent promise, oral or written, by the drawer or indorser to pay to the holder the bill, the drawer or indorser knew that the holder had failed on the day of its maturity to make presentment of and demand for the payment of the bill, and that in consequence thereof such indorser or drawer had ceased in law or equity to be further bound or liable thereon. (Daniel on Negotiable Instruments, 598, 1149; Thornton v. Wynn, 12 Wheaton, 189; Ralston v. Bullitts, 3 Bibb, 203; Ray v. Bank, 3. B. M., 510; Spinlock v. Union, &c., 4 Humphreys, 336; Ford v. Dallam, 3 Coldwell

German National Bank v. Butchers' Hide and Tallow Co.

(Tenn.), 67; Tichner v. Roberts, 11 La. An., 14; Bank v. Leathers, 10 B. M., 65; Parsons on Bills and Notes, vol. 1, p. 601; Kelly v. Brown, 5 Gray, 108; Low v. Howard, 10 Cush., 159; Hunt v. Wadleigh, 26 Maine, 271; Edwards v. Tandy, 36 N. H., 540; Fanington v. Brown, 7 N. H., 271; Trimble v. Thorne, 10 Johnson, 152; Salisbury v. Renick, 44 Mo., 554; Newberg v. Towbridge, 13 Mich., 264; Chesin v. Taylor, 24 Iowa, 492; Walker v. Rogers, 40 Ill., 278; Van Winkle v. Downing, 19 La. An., 83; Ford v. Dallam, 3 Coldwell (Tenn.), 67.)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The appellee is a corporation, the stockholders of which are the butchers of Louisville. In aid of its trade, it also organized a corporation known as the Kentucky Oak Tanning Company, the stockholders of which, with a trifling exception, were the first corporation and its stockholders.

Pursuant to the purposes of its organization, the latter corporation some ten years before the institution of this action took from the appellee a large quantity of hides coming from animals slaughtered by the butchers of the city, and executed its four notes, aggregating some $40,000, negotiable and payable to the appellee at the bank of the appellant. These notes were at once discounted at their place of payment and their proceeds placed to the credit of the appellee.

Upon the maturity of each of the notes, from time to time, for many years, the appellant bank, at the instance and request of the two corporations—the payee and the payor—renewed the paper in the usual course of business, using for that purpose, the following form:

"$            Louisville, Ky..............:......18..
.............................after date.....promise to
pay to the order of....................................
.............................................dollars, value
received negotiable and payable at the office of the German National Bank, at Louisville, Ky., with interest after maturity at the rate of 6 per cent per annum until paid."

This was signed thus: "Kentucky Oak Tanning Company,
                "By its President, Gottlieb Layer.
Endorsed: "Louisville Butchers' Hide and Tallow Co.
                "By Adam C. Layer, President."

The name of the appellee would be filled in as the payee, and when the proper dates and amounts were inserted and the signatures of the parties attached, the note would be delivered to the bank.

When two of the notes matured on April 8, 1890, the usual form was not at hand, and the bank official furnished to the payor a form of this kind:

"$                     Louisville, Ky..........189..
...................................days after date we jointly and severally promise to pay to the order of the German National Bank, of Louisville, Ky.............dollars, value received, negotiable and payable at the office of said bank at Louisville, Ky., with interest after maturity at the rate of six per cent. per annum until paid."

Upon getting this form, the book-keeper and general manager of the tanning company, with an old form before him, sought to make the new conform to the old form, and therefore ran his pen through the words "German National Bank," as well as through some other words not found in the old. The note then read as follows, it being one of those sued on in this action, the other one differing only as to its amount:

"9,464.21              Louisville, Ky., April 8, 1890.
Four months after date we promise to pay to the order of the Louisville Butchers' Hide and Tallow Company nine thousand four hundred and sixty-four dollars and twenty-one cents, value received, negotiable and payable at the office of said bank, at Louisville, Ky., with interest after

maturity at the rate of 6 per cent. per annum until paid."
Signed: "Kentucky Oak and Tanning Company.

"By Gottlieb Layer, President."
Endorsed: "Louisville Butchers' Hide and Tallow Co.

"By its President, Adam C. Layer."

The other two notes were renewed on the old forms.

When they were due the last time, each of the four was duly protested for non-payment, and thereafter this action on them was brought in the Jefferson Court of Common Pleas, but was finally heard by the chancellor in the Louis-ville Chancery Court. The petition was amended and refor-mation asked as to the two notes where the erasures occurred, and it was alleged that the words "German National" were left out by mistake and the words "said bank" meant in fact, in the contemplation of all the parties, the German National Bank. This was de-nied by the appellee, and it was contended that the notes were not negotiable and payable at any bank, and that the only liability imposed on the appellee was that of assignor, and this had been discharged by the negligence of the bank in failing to prosecute the maker of the notes to insolvency.

It was also contended that the act of the appellee's presi-dent in discounting and renewing the four notes was *ultra vires;* that as to two of the notes, there was no mistake, or if there was, it could not be corrected.

After an elaborate preparation of the case the chancellor held that the contention on the part of the defendant that its president had no right under its articles of incorporation and by-laws to discount paper could not be sustained; that it had received the proceeds of the discounts and had con-tinued to hold them, and in many other ways had approved the action of its president in making the discounts in ques-

tion. As to two of the notes, therefore, judgment was render-
ed for the plaintiff. It was held, however, that the evidence
as to the mistake in the execution of the other notes was in-
sufficient to authorize the court to reform them, and as to
them the court dismissed the petition.

It is to be observed at the outset that this contest is be-
tween the original parties to the notes. The rights of no in-
nocent holder are involved, or of any indorser for mere ac-
commodation. The appellee sold to the appellant and re-
ceived and used the proceeds of the notes in its business.
It continues to do so, and we hardly need cite authority in
support of the chancellor's conclusion that the transaction
was not void for want of authority on the part of the appel-
lee's president to discount the paper.

*The corporation can not hold on to the money and repudiate
the acts by which it got it.*

"In every case a corporation must account for benefits
which it has received under an *ultra vires* transaction. This
is a well-known equitable doctrine. It has been applied not
only to persons of full age and under no disability, civil or
mental, but also to those who are under some incapacity—
infants and lunatics. From these persons the principle has
been extended to corporations." (Brice on Ultra Vires, 2
Eng. Ed., 769.)

"A corporation can not be charged with the loan of
money made by its directors without authority, but if any
portion of the money was applied for the benefit of the com-
pany, it may be held liable to that extent at least." (Mora-
wetz, sec. 123.)

See also to same effect Springfield &c. T. P. R. Co. v. Trus-
tees of Harrodsburg, 11 Ky. L. R., 309; Sherman Center
Town Co. v. Russell, 26 Pac. Rep., 715; Congress &c. Spring
Co. v. Knowlton, 103 U. S., 57.

As to the question of the place of payment, it seems to us hardly necessary to have made the attempt to correct the oversight of the draftsman in leaving out the words "German National." It is perfectly manifest that in the contempla- tion of all the parties to the transaction, the words " said bank" meant the appellant. Three times each year for from eight to ten years the appellee had regularly endorsed the forms furnished by this bank, where it had originally gotten the money, and we do not doubt it was as much surprised as the appellant in discovering the absence of the usual words. Under the circumstances, the language "said bank," as used, meant the German National Bank. But if we could not so read the paper, the evidence is absolutely conclusive as to its real meaning. The officers of the bank, those of the tanning company, as well as those of the appellee, unite in saying that in signing the notes sued on in renewal of former ones, the intention was to sign duplicates of the old notes, which were all payable at the German National Bank.

The president of the appellee says that when he signed the notes sued on he intended signing such duplicates, and that what he did in fact sign *meant the German National Bank*; that there was no other meant. The learned chan- cellor was of opinion that there was no direct proof of an antecedent contract between the parties, that the particular notes sued on were to be made payable at this bank, and it may be admitted that none of the witnesses say in express terms that there was such an antecedent agreement or con- tract to that effect. What is absolutely clear, however, is that the evident understanding of each party to the trans- action was that the renewals were to be made payable as the old notes had been for years. The common intention of the parties, as shown by the entire absence of any contrariety

in their testimony on this point, is evidence of their mutual understanding and agreement. It was because of this arrangement and agreement, so well understood, that the intent was common and mutual to all to sign notes payable at the bank where they were doing this particular business. If such were the purpose of the parties to the bills, why may not the agreement be carried out by the insertion of the omitted words? In Scales v. Ashbrook, 1 Met., 358, it was held that "relief should be granted whenever an instrument"—in that case a bill of exchange—"which is intended to carry into execution an agreement previously made, by mistake of the draftsman, either as to law or fact, does not fulfill that intention, or violate it. In such case equity will correct the mistake * * and will compel the party refusing to comply with the agreement according to its terms." Citing Inskoe v. Proctor, 6 Mon., 311; Hunt v. Rousmaniere, 1 Peters, 13; Story's Eq., sec 115. To the same effect see Parcels v. Gohegan, 2 J. J. Mar., 133; McCurdy v. Breathitt, 5 Mon., 234. In Cothran v. Cunningham, 28 Ga., 178, it was held that parol evidence was admissible to show that it was agreed to make a note payable in bank, and the fact that a former note of which the note sued on was a renewal was so payable was a cogent circumstance, going to show such an agreement. (See also Farr v. Ricker, 46 O. St., 265; Watkins v. Maule, 2 Jacob & Walker, 237.)

Mr. Daniel, in his work on Negotiable Instruments, lays down the rule that mistakes in the execution of such paper may always be corrected, unless the rights of third persons have intervened. (Secs. 850-53.)

The learned chancellor very aptly said that courts of equity never rectify contracts, but that they do rectify the instruments evidencing the contracts. We can not agree with him, however, in holding that the agreement

in this case was not shown by sufficient proof, or that no mistake was shown in the execution of the notes. If the manifest intention or agreement of all the parties to the bills is to be effectuated the instruments must be read as if they contained the words "German National" between the words "said bank." It is impossible to doubt this under the proof.

Affirmed on cross-appeal and reversed on the original appeal, with directions to enter judgment on each of the notes sued on.