### Wilson, et al. v. Noe.

(Decided June 21, 1911.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

Sale—Action to Set Aside—Fraud.—In an action to set aside a sale on the ground of fraud, the finding of the chancellor who was on the ground, knew the witness and heard them testify, will not be disturbed where upon the whole case the evidence is conflicting and such as to leave the mind is doubt.

L. A. HICKMAN for appellants.

BULLITT, RYAN & HEMPHILL for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Appellee, Everett D. Noe, brought this action against appellants, Ben H. Wilson and Ada S. Wilson, his wife,

to set aside the sale of an automobile to Ada S. Wilson on the ground that appellee, the seller, was induced to make the sale by the fraudulent representations of Ben H. Wilson. On the same day the petition was filed, an order of attachment, pursuant to section 250 of the Civil Code, was levied on the automobile, and the sheriff took possession of it. Appellants filed proper affidavit and motion to discharge the attachment. This motion was overruled, and on final submission of the case the attachment was sustained, the sale set aside, and the automobile restored to appellee. From that judgment this appeal is prosecuted.

The motion to discharge the attachment was heard on oral testimony. By agreed order this testimony was read on the final hearing. The testimony was also supplemented by certain depositions.

The evidence for appellee is as follows: In the fall of 1910 appellant, Wilson, and appellee were negotiating with reference to the purchase of a Haynes automobile by the former from the latter. On October 1st, 1910, they met, and appellant, Wilson, proposed that he would give a four-months' note for the automobile, with his mother-in-law, Jennie D. Stratton, as surety. Appellee replied that the note would have to be one which could be discounted and turned into cash immediately, and Wilson assured him that his mother-in-law would make the note perfectly good. Appellee agreed to the sale only on condition that the note would be good and could be discounted and turned into cash immediately. On October 4th they again met by appointment, and Wilson assured appellee that the note would be gilt-edged. Appellee and a friend of his by the name of King, from whom he had bought the automobile. brought it around, and appellant and a negro boy, whom Wilson proposed to employ as his chauffeur, got into the machine and drove out to Wilson's house for the purpose of having the note signed by Mrs. Stratton. During this time King drove the car. When they arrived at the house the note was signed by Mrs. Stratton as surety, and the bill of sale for the automobile was also signed. The bill of sale was made out to Wilson's wife. The note was then handed to Noe, and the entire party proceeded to the German Insurance Bank, where the note was made payable. While approaching the bank, Noe again repeated the condition which he claims to have insisted on from the beginning, namely, that the note would have to be turned

into cash immediately, or else there was no sale. The purpose of the party in going to the bank was to ascertain whether or not this condition could be fulfilled. When they arrived at the bank, Noe and Wilson entered the same, leaving King and the colored boy in the car. Noe and Wilson proceeded to the office of the president, Mr. Walbeck, and Noe presented the note for discount Walbeck asked whether or not Noe was a customer of the bank, and Noe replied that he was not. Walbeck then said that they were at that time accommodating only their regular customers and could not discount the note. Noe then inquired of Walbeck if the note was good. Walbeck asked if the Jennie D. Stratton, whose name was signed to the note, was the widow of John A. Stratton, at the same time stating that if such was the case the note was good. Noe testified that Wilson, who was standing right by him, said "yes," that she was the widow of John A. Stratton. Walbeck testified that he thought it was Wilson who made the statement. When Noe heard this statement of Wilson, to the effect that the latter's mother-in-law was the widow of John A. Stratton, he concluded the note was good and he could afford to accept it. When Noe and Wilson came out of the bank, Noe stated to his friend King that everything was all right. They then drove to Fourth and Jefferson streets. There Noe turned over the car to Wilson and delivered the bill of sale. A few days later, Noe discovered that Wilson's mother-in-law was not the widow of John A. Stratton, and that the note was worthless. He accordingly demanded an explanation and reparation from Wilson, but could get no satisfaction. Noe claims that when he brought the matter to Wilson's attention, the latter said: "I will bet I will skin you, any way you take it."

According to the evidence for appellants, appellee himself suggested that he would sell the machine to appellant and take a four-months' note for it, provided appellant's mother-in-law would sign the note as surety. This was finally agreed to. Wilson made no representations to the effect that his mother-in-law was solvent and would make the note good. When the note was executed his mother-in-law had $500.00 in cash, and some land in Florida worth $2,500.00, and Wilson's wife also had some money in bank. Wilson claims that the note was good because they would have paid it when it became due.

Upon going to Wilson's home, certain accessories belonging to the car were deposited in Wilson's stable. When Mrs. Stratton signed the note the bill of sale was turned over to Mrs. Wilson and placed in her trunk. This is testified to by Wilson, his wife, Mrs. Stratton and a negro boy. It is, therefore, contended by appellants that the sale took place prior to the time they went to the bank. The evidence also shows that Noe never made any attempt to discount the note in his own or any other bank. Wilson denies that he stated in the presence of Mr. Walbeck that his mother-in-law was the widow of John A. Stratton, but claims that, if any such question was asked, he misunderstood it.

While there are many facts and circumstances connected with this case tending to support appellants' claim, that no fraudulent representations were made, yet, in view of the fact that the greater part of the evidence was heard orally, in the presence of the court, who had an opportunity to observe the demeanor of the witnesses while testifying, and who doubtless knew many of those who did testify, and of the further fact that the evidence is conflicting and such as to leave the mind in doubt, we are not disposed to disturb the finding of the chancellor.

Judgment affirmed.