## Southeastern Land Company v. Jonnard.

### (Decided January 19, 1923.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Cancellation of Instruments—Fraud—Evidence.—To entitle a party to a cancellation of a written instrument upon the ground of fraud and false representations, the evidence thereof must be clear and convincing.

2. Cancellation of Instruments—Finding of Chancellor.—The issues being purely equitable, the verdict of a jury which the chancellor called to his aid in deciding whether or not the alleged false representaations were made was merely advisory, and upon appeal the judgment of the chancellor must be tested by the evidence rather than the verdict of the jury.

3. Cancellation of Instruments—Finding of Chancellor.—Being convinced, upon our consideration of the evidence, that plaintiff has clearly and convincingly proven that he was induced to make the contract by reason of and in reliance upon representations as to existing facts that were material and false, it is not necessary to consider what may have been the chancellor's reasons for calling the jury or the weight he gave to its verdict.

4. Cancellation— Instruments — Rescission.— Evidence as a whole, though contradictory, may be clear and convincing, and therefore of the character required to entitle a party to a rescission and the cancellation of a contract.

5. Contracts—Ratification or Repudiation—Unauthorized Agent.— Where the contract for a sale of land was made for a corporation by an unauthorized agent, and the corporation consummated the contract by execution of deed as therein provided, it must, when knowledge of all the facts are brought home to it, either ratify or repudiate the contract as made by such agent as a whole, and it cannot, with full knowledge of all of the facts, retain its benefits and avoid its burdens.

6. Rescission—False Representations—Ratification.— An unaccepted offer by the plaintiff, five days after he learned the representations were false, to buy back property he had conveyed to defendant in part payment of the land conveyed to him was not a ratification by him of the trade. Nor did he ratify the contract

by exercising such dominion and ownership over the property conveyed to him as was necessary for its preservation and operation from the time he learned such representations were false until a month later when he sued for a rescission.

7. Rescission—Restoring Status Quo.—A rescission will not be denied upon the ground that it has become impossible to restore the status quo, where it may be substantially restored in every respect except as to the maturity of a lien on the property of the party opposing the rescission, which has been precipitated by his own default.

BASKIN & VAUGHAN and FRED FORCHT for appellant.

HUMPHREY, CRAWFORD & MIDDLETON and PENNYBAKER & GODFREY for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Prior to August 20th, 1920, appellee was the owner of the St. Charles apartments located at the corner of Second and Walnut streets in Louisville, containing 34 apartments, and upon which there was a mortgage lien of $65,000.00, and appellant was the owner of the Realty Building located at the corner of Center and Jefferson streets in the same city, containing 67 office suites, and upon which there were two mortgage liens aggregating $97,000.00. Upon that date they entered into a written agreement to exchange these buildings, each party agreeing to assume the indebtedness against the property to be transferred to him, and appellee agreeing in addition to pay to appellant $100,000.00, to be secured by a third mortgage upon the Realty Building, and payable on or before ten years, and to execute to it his three unsecured notes aggregating $10,000.00 payable in six, nine and twelve months, respectively.

By the execution and delivery of the necessary deeds and notes, the contract was consummated on the 28th of August, and appellee actually came into possession of the Realty Building on September 4th, 1920. On the 21st of October, 1920, he instituted this action for a rescission of the trade and the cancellation of the deeds and notes he had executed and delivered to appellant.

After the action had been thoroughly prepared in equity and submitted to the chancellor for final judgment, the latter upon his own motion called a jury and submitted to it in five questions the alleged false representations upon which the plaintiff relied for a rescission. In the negotiations which resulted in the execu-

tion of the contract between the parties for the exchange of these buildings the appellant was represented by O. S. Kline, and appellee by George W. Hampton.

The questions submitted to the jury were whether or not O. S. Kline, on or about the 20th day of August, 1920, for the purpose of inducing Jonnard to make the contract, falsely represented to him:

(1) That the gross rentals on the Realty Building, as then being collected, amounted to $42,000.00 a year.

(2) That for the year beginning August 1, 1920, they would amount to $52,000.00 by reason of the renewal of their leases by tenants, at increased rentals.

(3) That the Builders Exchange, a tenant occupying the fourth floor of the Realty Building, was paying a rental of $200.00 a month, and had agreed to renew its lease at the rate of $400.00 a month.

(4) That the expenses of operating the Realty Building, including ground rental, taxes, insurance, water, employes and general upkeep, but exclusive of unusual repairs, had never exceeded $20,000.00 in one year.

(5) That the rentals of the Realty Building were, for the year ending August 1, 1920, as set out in "exhibit 1" filed with Jonnard's deposition; and that the rentals of the building would amount for the next year by renewal of agreements with the tenants to the sum set down in said exhibit under the "will be" column therein.

All five of the questions were answered by the jury in the affirmative, and thereafter the chancellor entered a judgment conforming to the prayer of the petition, and the defendant has prosecuted this appeal.

1. The rule is thoroughly established that to entitle a party to a cancellation of a written instrument upon the ground of fraud and false representations, the evidence thereof must be clear and convincing. Ferguson v. Akers, 165 Ky. 289, 176 S. W. 1149; Cole v. Young 167 Ky. 602; Johnson v. Gadsberry, 174 Ky. 62; Johnson v. Elkhorn Gas Coal Mining Co., 193 Ky. 585, 236 S. W. 1041.

That the evidence for plaintiff was not of this character is the first insistence for a reversal by defendant, and it is claimed in support thereof that the chancellor, in calling the jury as well as by recitations in his judgment, in effect so admitted. The issues involved were purely equitable and the verdict was merely advisory,

hence the judgment of the chancellor must be tested by the evidence rather than the verdict of the jury. Lampkin v. Cambron's Admr., 194 Ky. 246.

It would therefore seem of but little moment upon this appeal whether or not the chancellor, upon his consideration of the evidence, was in doubt as to the right of the matter or whether or not his judgment was induced by the verdict of the jury rather than upon his independent consideration of the evidence, if, upon our consideration of the evidence, we are convinced that the plaintiff has clearly and convincingly proven that he was induced to make the contract by reason of and in reliance upon representations as to existing facts that were false and material. Being so convinced, we need not discuss what may or may not have been the chancellor's reasons for calling to his aid a jury or the weight he gave to its verdict.

Upon the crucial point, as to whether or not such representations were made and the trade thereby effectuated, the positive evidence for plaintiff that they were made can hardly be said to be contradicted by the evidence for the defendant. Such contradictions as there are in the evidence are as to the time or place or manner in which the representations were made, rather than as to whether or not they were in fact made.

The evidence is likewise clear and convincing that the representations, if made, were material and false, and upon this question it is clear the chancellor was in no doubt whatever, since it was not submitted to the jury. Without attempting to give the testimony in detail upon the question of whether or not Kline made these false representations, it is sufficient to say that three witnesses testified that they heard him make them at the time the contract was executed, and that two of them testified that he made them originally during the previous negotiations between the parties and that he represented both the rentals for the year ending August 1, 1920, and the "will be" rentals for the next year as being based upon existing contracts with the tenants.

In contradiction of this positive evidence, Kline admits dictating to the plaintiff from his memorandum book the figures in both columns of the exhibit filed by Jonnard, and which the latter reduced to writing at the time they were first given to him by Kline. But Kline insists that the figures in the "will be" columns were only his estimates of what the plaintiff might reasonably

charge the tenants for the year beginning August 1, 1920, and that he did not represent that they were supported by existing contracts. He also denies that he repeated these representations at the time the contract was executed, and attempts to show that he was not present at that time.

The evidence as a whole, however, although contradictory, is to our minds both clear and convincing that the representations were both made as claimed by plaintiff and false, and hence is of the character required to entitle him to a rescission of the contract. Wilson v. Noe, 144 Ky. 374, 138 S. W. 273; Ison, &c. v. Sanders, 163 Ky. 605; Robinson, &c. v. Eastern Gulf Oil Co., &c., 196 Ky. 385; Black on Rescission and Cancellation, sec. 683.

2. It is however contended by the appellant that a rescission must nevertheless be denied, because (a) Kline was not the agent of appellant, (b) plaintiff, with knowledge of the facts, ratified the transaction, and (c) plaintiff by his act has made it impossible to restore the defendant to the status existing when the deeds were executed.

(a) That Kline was acting for the appellant under authority of its president, J. W. McClung, is admitted, but it is insisted that his appointment was invalid because not made by an order of the board of directors of appellant, which is a corporation. While it is true that the president of a corporation has not the power ordinarily to sell out the business or to employ and authorize an agent so to do, it is extremely doubtful if that principle is applicable here because the business of appellant seems to have been in part if not primarily the buying, developing and selling of real estate, and the sale of this building to have been but an incident in the prosecution of its business, which its president might do or employ another to do, rather than a disposition of the business itself.

Then again, McClung was also president of the McClung Realty Company, a corporation which it is admitted was regularly employed and empowered as selling agent for the Southeastern Land Company, and as such he doubtless had the power to employ Kline to negotiate a sale of the building listed with the realty company for sale, since such a corporation must necessarily act through its agents and employes. But we need not, and do not rest our decision upon either of these

considerations, since even if Kline did not represent appellant in this transaction under proper prior appointment, it accepted and insists upon retaining the benefit of his services and cannot now, with full knowledge of all the facts, adopt and enjoy the contract's benefits and repudiate its burdens. Its parts are not thus severable, and it must have been adopted or repudiated as a whole. The fact, if a fact, that when the deeds were exchanged the defendant did not know of the representations made by Kline as its unauthorized representative, can not give it the right, after those facts are made known to it as they now are, to hold on to the contract and its benefits and avoid the considerations which induced plaintiff to make it, as is its attempt here.

So even if the defendant did not by the consummation of the contract then ratify it because of lack of knowledge of its terms, it is now with full knowledge attempting to do so but only in so far as it is beneficial, and this it can not justly do. It must either stand by the whole contract as it was made, or repudiate it in its entirety, and the result is the same, since the fraudulent representations which induced it, destroy it. The rule is thus correctly stated in 10 Cyc. 1078:

"A leading principle in the law relating to this subject is that where a contract is made by one assuming to act in behalf of a corporation, and for a purpose authorized by its charter, and the corporation, after knowledge of the facts attending the transaction is brought home to its proper officers, receives and retains the benefit of it without objection, it thereby ratifies the unauthorized act and estops itself from repudiating it. The reason is that it must exercise its option of affirming or disaffirming in whole and not in part; that it cannot disaffirm so much of the unauthorized act as is onerous, while retaining so much of it as is beneficial; that it cannot keep the advantage while repudiating the burden; that it cannot disaffirm the contract, while keeping the consideration."

To the same general effect are Frankfort, etc., Turnpike Co. v. Churchill, 6 T. B. Mon. 427, 17 Am. Dec. 159; German National Bank of Louisville v. Butchers, &c., Co., 97 Ky. 34, 29 S. W. 882; Paducah Wharfboat Co. v. Mechanics Trust, &c., Bank, 164 Ky. 729, 176 S. W. 190, as are also Elk Valley Coal Co. v. Thompson, 150 Ky. 614, 150 S. W. 817, and Caddy Oil Co. v. Sommer, 186 Ky. 843. These two last named cases are relied upon by de-

fendant, but neither supports in the least its contention, since they only hold that a ratification of a contract of sale by an unauthorized agent did not ratify in the one case the terms of his employment by one not empowered so to do, and in the other case of another distinct contract by the same agent; and both cases expressly recognize and state in substance the rule above stated that a contract by an unauthorized agent must be ratified, if at all, as a whole, and that the benefits can not be retained and the burdens avoided.

Appellant therefore can not retain the benefits of the contract and repudiate the considerations which induced it, and it is immaterial whether the employment of Kline, who made the contract for it, was regular or not.

(b)   The claim that plaintiff ratified the contract with full knowledge of all of the facts, is based in part upon his offer to defendant to buy back from it the St. Charles apartment after he had learned the true conditions with reference to the Realty Building, which he did on the 25th day of September, 1920.

While it is true this offer was made five days after, plaintiff, by his own testimony, knew the representations were false, and if accepted by the defendant would have been a ratification by him of the trade, it was nevertheless at most but a proposition to defendant to ratify the trade upon condition that defendant, upon the terms therein specified, would let him have back his property. As this the defendant declined to do, the unaccepted offer by plaintiff upon other terms than a cancellation to waive whatever claim he might have against the defendant, does not seem to us in any sense an act of ratification, but was rather simply an offer to let the trade stand upon terms which the defendant declined to accept.

Neither in our opinion does the fact that plaintiff exercised such dominion and ownership over the Realty Building as was necessary for its preservation and operation during the short period from September 20, when he learned that the representations upon which he had relied in making the trade were untrue, until October 21, when he instituted this action for a rescission, constitute a ratification of the trade.

Another fact relied upon as a ratification of the contract is that plaintiff, between the execution of the contract and the exchange of the deeds by the parties, had information that the Builders Exchange had not agreed to renew its lease at $400.00 per month. This was but

one of the several representations which had induced him to make the trade, and the fact that he was willing to waive one of several representations surely did not bind him as to others about which he did not know, or alter his right to complain when later he discovered that the misrepresentations were so numerous, and in the aggregate so material that he was unwilling and unable to waive them all.

We are therefore of the opinion that the plaintiff's right to have the contract cancelled was not defeated by any ratification by him of the same.

(c)    The claim that plaintiff is not entitled to a cancellation because a restoration of the *status quo* had become impossible is without merit, since it is based solely upon the fact that because of the failure of plaintiff to pay installments of interest and principal as due upon the $97,000.00 of liens against the Realty Building, the maturity of the whole of the indebtedness was precipitated.

By the terms of the agreement, defendant was to pay the installments which were defaulted, and to be reimbursed by plaintiff at a distant future date, and the fact that it must take the Realty Building back under the judgment with the liens thereon due at once instead of serially over a period of over twenty years, is due to its own default and not that of the plaintiff.   These defaults were made after this suit had been instituted, and whatever its outcome, the obligation to pay these sums as due was defendant's and not plaintiff's and the excuse it offers for not paying them—that it did not know how the suit might terminate—is entirely without force.

We are therefore of the opinion that the chancellor's judgment is correct in rescinding the trade, restoring the properties, and cancelling the deeds and lien notes executed by the parties in carrying out its terms, but the $10,000.00 in unsecured notes which plaintiff executed, and for which he was given judgment against the defendant, have not been paid by him, and the judgment in his favor against the defendant for the amount thereof should have provided that it should not be enforced by execution or otherwise, unless and until plaintiff has paid these notes which the record shows are held by innocent third parties, and could not therefore be cancelled.

Wherefore, with this modification, the judgment is affirmed.