## Liberty Coal Mining Company v. Frankel Coal Company.

### (Decided December 12, 1924.)

### Appeal from Jefferson Circuit Court (Common Pleas, Third Division).

1. Mines and Minerals—Contract by President of Corporation, Obligating it to Pay for Store Checks Furnished to Coal Mining Company, Held Established.—Evidence held to establish contract by

president of coal selling corporation, obligating it to pay for store checks furnished to coal mining company by another such company.

2.  Mines and Minerals—Corporation Held to have Ratified President's Contract Made by Him Without Express Authority.—Corporation, all of whose stockholders knew of president's conduct giving rise to contract with coal mining company, to pay for store checks furnished another such company, ratified his acts and cannot repudiate them, after performance by payee, on ground that president exceeded his authority, though he was never expressly authorized to make contract.

3.  Mines and Minerals—Contract Held Not Ultra Vires as Guaranteeing Payment of Another Corporation's Debt.—Contract by corporation to pay mining company for store checks furnished to another such company, after expressly refusing to extend credit to latter, held not ultra vires as guaranteeing payment of another's debt.

4.  Corporations—Corporation May Employ Another Corporation as Agent, and is Liable for Latter's Acts and Obligations.—Corporation may employ another corporation as its agent and will be liable for latter's acts and obligations in prosecution of duties of agency.

5.  Corporations—Ultra Vires Doctrine Unavailable When Corporation has Received Benefit of Contract.—Ultra vires doctrine is unavailable, when other party has executed and performed his part of contract and corporation has received benefit thereof.

6.  Mines and Minerals—Defense of Ultra Vires Contract Held Unavailable.—Coal selling corporation, reaping benefits of coal mined by company furnished store checks by another mining company, could not avail itself of defense of ultra vires in latter's action on contract to pay for such checks.

7.  Mines and Minerals—Right to Operate Coal Mine Held Within Charter Powers of Corporation in Business of Buying, Selling, and Handling Coal.—Right to operate coal mine in name of corporation or its agent held included in charter right to acquire real estate and "do and perform any and all acts and things necessary, proper or incident to the carrying on, conduct or promotion of its business," which was that of buying, selling and handling coal.

TRABUE, DOOLAN, HELM & HELM for appellant.

EDWARD BLOOMFIELD for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Both appellant, Liberty Coal Mining Company, and appellee, Frankel Coal Company, are corporations; the first one was plaintiff and the second one, defendant in the court below, and they will be so referred to in this opinion.

Plaintiff is engaged at Hillside, Muhlenberg county, Kentucky, in operating a coal mine, while defendant is located in Louisville, Kentucky, and engaged in the business of handling coal for the retail trade and in selling coal on commission. Prior to and about the middle of May, 1920, the Saulsburg Coal Company, another corporation, was engaged in mining coal at a point about one-half mile distant from plaintiff's mine, and, as it appears, its output was small and it had but little, if any, credit. On the date mentioned the stockholders of defendant, and especially its principal one, L. Frankel, purchased the majority, if not all, of the stock in the Saulsburg Coal Company and took charge of its affairs and operated it from that time forward, Frankel being its president and holding the same office with defendant.

Plaintiff operated in connection with its mine, a commissary store and it provided itself with metal store checks which it furnished to its employees and they were redeemable in merchandise at its store. The Saulsburg Coal Company had no store at its mine, and it, before the Frankels became interested therein, purchased for cash from plaintiff some of its store checks to be furnished to the employees of the Saulsburg Coal Company who traded at the commissary store of plaintiff. After the change in the ownership of the stock in the Saulsburg Coal Company, its bookkeeper, who had theretofore procured the store checks from plaintiff, was informed by the latter that no checks would be furnished on the credit of the Saulsburg Coal Company, whereupon the bookkeeper gave his individual check for the purchase of the store checks and notified Mr. Frankel of what had occured, and he then sent defendant's check to plaintiff in payment of the account. From that time on all store checks furnished by plaintiff to the Saulsburg Coal Company were paid for by the checks of the defendant, Frankel Coal Company, and sent from its office in Louisville, Kentucky, which payments were made at stated times, as per agreement between the parties. Some misunderstanding arose between plaintiff and defendant with reference to the payment for the store checks obtained by the bookkeeper of the Saulsburg Coal Company from time to time, and a correspondence ensued between them with reference thereto. In a letter which plaintiff addressed to defendant on August 12, 1920, the latter's attention was called to the fact that the check account for the last

half of July previous had not been paid, and prompt remittance was made in the manner hereinbefore stated. That remittance was acknowledged by a letter addressed to defendant and in it plaintiff said: "We are allowing the discount this time, but most positively we cannot allow discount unless paid within five days after the account is due. If this arrangement is not entirely satisfactory with you, please advise at once." In another letter written by plaintiff to defendant on August 30, 1920, there was enclosed a statement of the account for store checks furnished the Saulsburg Coal Company up to August 23, and in that letter plaintiff said, *inter alia*: "In our letter of August 16th we explained to you very clearly the condition on which we would handle your account, and we will not change our position, and unless that was entirely satisfactory with you we expected you to say so. We wrote you that our attitude towards you was not at all unfriendly, but this is our manner of doing business and unless we can do our way we will not do at all." On the next day (August 31), defendant answered that letter in which it said, among other things: "We did not pay this last bill for the reason that it was never sent in to us and as the Saulsburg mine is not our main issue in this office, we are jobbers of coal and jobbing coal is our principal business and if bills are not sent in to us promptly, we cannot pay them promptly. According to your original letter and agreement written by you to us and as the 5th of the month has not yet arrived, we are entitled to 10% on the balance of the account which we are deducting."

Things ran along smoothly after that and on December 22 defendant enclosed its check to plaintiff for the amount due for checks furnished as stated up to December 15, which was $940.00. During the period between December 16, 1920, and January 14, 1921, both inclusive, there was furnished by plaintiff to the Saulsburg Coal Company, under the same arrangements, store checks amounting to $1,400.00, which were never paid, the Saulsburg Coal Company going into bankruptcy shortly thereafter. This suit was filed by plaintiff against defendant to recover that account. The answer, as amended, was a denial, with a plea that if the contract was made by defendant or by its president it was unauthorized and *ultra vires*. Appropriate pleadings made the issues and at the close of all the evidence the court sustained defendant's motion for a peremptory instruction in its

favor, and upon the verdict so directed the petition was dismissed. Plaintiff's motion for a new trial was overruled, and it prosecutes this appeal.

It does not appear from the record the grounds upon which the court directed the verdict, but it necessarily must have been because the court was of the opinion (1) that there was no contractual obligation on the part of defendant to pay for the store checks furnished by plaintiff to the Saulsburg Coal Company, or (2), if there was such contract, then it was *ultra vires* as one beyond the authority of defendant to make under the provisions of its articles of incorporation, and we will dispose of those two reasons in the order named.

1. In support of the first reason, it is argued (a), that plaintiff never made any contract with Mr. Frankel, defendant's president, by which the Frankel Coal Company would pay for the store checks furnished to the Saulsburg Coal Company, and (b), but if such a contract was made by Frankel for and on behalf of defendant, then he had no authority from defendant to make it. We find ourselves, however, unable to agree with either of those contentions. It is true Mr. Frankel never negotiated *in person* a contract with plaintiff to furnish the store checks for the purposes stated, but he was informed by Mr. Pritchard, the bookkeeper of the Saulsburg Coal Company, that the checks would not be furnished by plaintiff to the Saulsburg Coal Company, unless cash was paid at the time, and defendant thereafter not only paid Pritchard the amount he had individually advanced for checks, but continued to pay plaintiff for them at the stipulated periods, and the correspondence to which we have referred establishes beyond question such a contract. It is said, however, that Frankel denied that correspondence; but we do not so interpret his testimony. It is true that when he was shown *carbon copies* of plaintiff's letter to defendant he would answer that he never saw *that paper* before, which no doubt was literally true, but he never positively stated that he never saw the original letter; nor does his attempted denial of writing the letter of August 31, 1920, to which we have referred, convince us that no such letter was written by defendant's authority. His whole testimony is very evasive and nonconvincing.

In addition to what we have stated, Frankel corresponded with reference to the account sued on, sometimes by letters and sometimes by telegrams, and in every in-

stance he acknowledged in substance that it was just and due and promised payment. He says now that such correspondence was made by him as president of the Saulsburg Coal Company, but he appears to have been the sole moving spirit of both corporations, and indeed to have been operating the Saulsburg Coal Company as an adjunct to the business of defendant, Frankel Coal Company; for it will be remembered that he said in the letter of August 31, that "the Saulsburg mine is not our main issue in this office."

Moreover, it is proven without contradiction (not even Frankel testifying to the contrary) that all the funds with which the Saulsburg Coal Company conducted its business were furnished by checks of the Frankel Coal Company. So that the substance of the arrangement between that company and the defendant appears to have been that it was operating the mine in Muhlenburg county for and on behalf of defendant; or, in other words, that defendant was operating that mine in the name of Saulsburg Coal Company. All the stockholders of defendant knew the true situation, as we have outlined it, including the conduct of defendant with reference to paying plaintiff for the store checks at the times agreed upon. If, therefore, Frankel had never been expressly authorized by defendant to make the contract under which the account sued on was created, it ratified his actions in the matter, and cannot now repudiate them, after performance by the other party, and upon the ground that Frankel exceeded his authority. A late case so holding and in which other authorities are cited is Southeastern Land Co. v. Jonnard, 198 Ky. 504. Other cases in point are Commonwealth, for Use, etc. v. Mehler Eckstenkemper Lumber Co., 183 Ky. 11; Eureka Co. v. Bailey Co., 78 U. S. 488, and Fitzgerald Con. Co. v. Fitzgerald, 137 U. S. 98. The legal proposition is one fully included in the well understood doctrine of ratification, and we do not regard further comment as necessary. We, therefore, conclude that neither reason (a) nor (b) is available under the proven facts to sustain ground (1), upon which the court may have acted.

2. It is insisted in support of this ground that if it should be conceded that defendant entered into the contract with plaintiff (as we have held to be true), then its substance was that defendant guaranteed to plaintiff the payment of the debt of another, and that the contract was, therefore, *ultra vires* and nonenforceable. Answer-

ing that contention, it might first be stated that credit was never extended by plaintiff to the Saulsburg Coal Company; it expressly refused to do that, and defendant was informed of that fact, and afterwards settled the installments of the account with its own checks; and if the account was charged on the books of plaintiff to the Saulsburg Coal Company (but which is not clear from the proof) it was done only as a matter of convenience and not for the purpose of extending credit to that company, and with the intent and knowledge that it would be taken care of and settled by defendant, all of which was superinduced by its conduct and confirmed in the letters to which we have referred. But, however that may be, it has also appeared in this opinion, and to which we have referred, that it is shown almost beyond dispute that the Saulsburg Coal Company was but an agent of defendant to extract coal from the mine, in which event defendant would be liable for the debts of the Saulsburg Coal Company which it created in the operation of the mine, since it is everywhere conceded that a corporation may employ another corporation as its agent, and will be liable for the acts and obligations of the latter in the prosecution of the duties of the agency.

Independently, however, of any of those principles or any prior observations herein, the law is well settled that the *ultra vires* doctrine cannot avail as a defense to the defendant corporation when the other party has executed and performed his part of the contract and the corporation has gotten the benefit of it. Some courts hold that while the corporation cannot be held on the contract, yet it is liable on a *quantum meruit* upon the ground that it should not retain the consideration flowing from the other party's performance without responding for its value. In this case, however, the value of the consideration for which plaintiff sues, and which it furnished in the performance of its contract, is the same as the agreed price fixed in the contract, and whether defendant was liable on a *quantum meruit* or upon the contract can have no material effect. Other courts, including this one, uphold the liability of the corporation in such cases upon the contract. Albin Co. v. Commonwealth, 128 Ky. 295; Chenault v. Grigsby, 9 Ky. Opin. 258, and Walker v. City of Richmond, 173 Ky. 26. In the last case a municipal contract was involved and it was clearly *ultra vires,* yet we held that the municipality should account for the consideration it had received from the one who had per-

formed it. For the general modern rule upon the subject as applicable to private corporations, see 14a C. J., page 319, paragraph 2169, page 323, paragraph 2170 and page 583, paragraph 2529, and 7 R. C. L., page 679, paragraph 681, from which we do not deem it necessary to insert excerpts. If, therefore, the contract involved was strictly an *ultra vires* one, under the doctrine of the cases and authorities referred to, defendant could not avail itself of that defense under the facts of this case, since it is clearly shown that it reaped the benefit of the coal mined by the Saulsburg Coal Company for the production of which plaintiff partly paid by furnishing its store checks.

Finally, it may be said that an examination of plaintiff's articles of incorporation convinces us that it was empowered to acquire mines and to operate them which, as we have hereinbefore stated, it might do in the name of an agent as well as in its own name. The articles say: "That the business to be promoted and carried on by said corporation shall be and is to buy, sell, handle and trade in coal of every kind and character, . . . also to establish and maintain branches in this state and elsewhere; and to acquire, buy, own, hold, sell and rent real estate and personal property, including the stock of other corporations, as if it were a natural person, and to do and perform any and all acts and things necessary, proper or incident to the carrying on, conduct or promotion of its business." Certainly if not included in any of the other granted powers, the right to operate a coal mine is included in the right to acquire real estate "and to do and perform any and all acts, and things necessary, proper or incident to the carrying on, conduct or promotion of its business." The act of mining coal from under real estate which defendant was authorized to acquire is certainly an incident to the carrying on of the business of buying, selling and handling coal and is in promotion of that business.

No motion for a peremptory instruction was asked for by plaintiff, and that question is not presented nor passed on; but for the reasons stated, the judgment is reversed with directions to grant a new trial and for proceedings consistent with this opinion.