## H. C. Whitmer Company v. Jordan et al.

(Decided October 1, 1929.)

B. S. HUNTSMAN for appellant.

N. F. HARPER and A. J. OLIVER for appellees.

Opinion of the Court by Judge Clay—Reversing.

The H. C. Whitmer Company is a corporation engaged in manufacturing and selling medicines, extracts, stock food, and other goods. On October 4, 1926, the company entered into a contract with W. P. Jordan, by which it agreed to sell and deliver to him on board cars at Columbus, Ind., its goods at current wholesale prices. Among the provisions of the contract was the following:

> "He further agrees to pay said company for all goods purchased under this contract the current wholesale prices of such goods by remitting in cash each week to said company not less than 50 per cent. of the cash receipts from his business until his account is balanced, and for that purpose as evidence of good faith he shall submit to said company weekly reports of his business. Failure on his part to make any such report when due shall, at the option of the company, terminate this contract."

Under the contract Jordan was entitled to certain discounts, if he paid his account in full on or before the 10th of each month, or when cash remittances accompanied his orders. On the termination of the contract he agreed to settle in cash within 60 days. He also had the privilege of returning promptly after the termination of the contract his stock of unsold goods. The contract was subject to acceptance at the home office, and was signed

by the company by F. C. Whitehouse, vice president. Following the signature of the company was the signature of Walter P. Jordan. Below the signature of the parties was the following:

"In consideration of the H. C. Whitmer Company extending credit to the above named party, we hereby guarantee to it, jointly and severally, the honest and faithful performance of the said contract, waiving acceptance and all notice, and agree that any extension of time or change of territory shall not release us from liability hereon."

Beneath the above were the signatures of Allen Livingston and J. T. Moore as guarantors. After their signatures is the following: "The above guarantors are entitled upon request at any time to a statement of account."

Charging that Jordan had been furnished with goods to the amount of $858.23, and that he had paid thereon in cash and merchandise returned the sum of $375.26, the H. C. Whitmer Company brought this suit against Jordan and his guarantors, Allen Livingston and J. T. Moore, to recover the balance amounting to $482.97. In the first paragraph of the answer the defendants denied the allegations of the petition, and in the second paragraph pleaded certain contemporaneous agreements and representations made at the time of the execution of the contract. A demurrer was sustained to the second paragraph. Thereupon the defendants filed an amended answer, pleading that the company's field manager, Milton Denton, agreed before they signed the contract that the company did and would require the weekly payments and weekly reports, and that unless he did so the company would exercise its option and terminate the contract, and would notify said guarantors, and with that understanding the defendants signed the contract; that by mistake, oversight, or fraud the above provision was left out of the contract, and that the company subsequently violated the omitted provision.

When this defense was interposed, plaintiff moved to transfer the case to the equity docket. The motion was sustained. Thereupon the defendants moved the court to retransfer the action to the ordinary docket, for the purpose of trying the issues of fact before a jury. This motion was also sustained. A jury was impaneled, and

at the completion of the evidence the court instructed the jury to answer the following questions "Yes" or "No":

"(1) Did plaintiff, H. C. Whitmer Company, through its agent, represent to the guarantors, Livingston and Moore, on the bond of Jordan, that the plaintiff would require said Jordan to make weekly payments of at least 50% of the cash receipts, and make weekly reports to the plaintiff, and that if he failed to do so that plaintiff would report to said Livingston and Moore?"

"(2) If the jury should find plaintiff did make such representations, if any were made, then the jury will say whether or not such representations, if any, were the sole cause of said Livingston and Moore signing their names as guarantors on Jordan's bond."

"(3) If the jury should find plaintiff did make such representations, if any were made, then the jury will say whether or not such representations, if any, were by mistake, oversight, or fraud left out of the written instrument."

"(4) Nine of the jury may answer the above questions, but, if less than the entire jury agree, those who do agree should sign same."

The jury answered each of the questions in the affirmative. Thereupon the court adjudged that the contract filed with the petition was not the full, true, and correct contract between the parties; that it was a part of the contract and understanding that the plaintiff would require said Jordan to make weekly payments of at least 50 per cent. of the cash receipts, and make weekly reports to the company, and that, if he failed to do so, the company would report to them; and that on account of an oversight, mistake, or fraud, said provisions were left out of the contract. The contract was then reformed, so as to contain said provisions. Thereupon the court adjudged that the Whitmer Company did not require Jordan to make weekly payments of at least 50 per cent. of the cash receipts, or to make weekly reports to the company, and did not notify Livingston and Moore of his failure to make said reports and said payments. It was further adjudged that said failure released the defendants Livingston and Moore from any liability on the contract, and that the petition be dismissed. From that judgment this appeal is prosecuted.

The evidence for appellant showed that the contract was the usual contract executed by the company, that no one but the president had a right to change its terms, and that Jordan owed a balance of $477.97. On the other hand, Jordan testified that before executing the contract he told Denton that he was not going to put a single thing out on time. Denton said that there was to be a settlement once a week, and Jordan was to make a weekly report to the company and send them 50 per cent. of the money he had collected. Denton told him to tell the bondsmen that. He further told him to tell the bondsmen that they would not force him to put the goods out on credit. He also said that, if Jordan did not make the weekly reports, the contract would be terminated within the next few days, or something like that. Witness afterwards saw Livingston and told him all that. Afterwards Mr. Whitehouse came there and told him to put the goods out on credit. Moore testified that Denton said to him that there would not be any trouble, as it would be cash sales and weekly settlements; that the company would require Jordan to make weekly payments. Denton did not say that, if Jordan failed to make weekly reports or payments, he would notify witness, but did say that he would terminate the contract. Witness further said that he would not have signed the contract, except for the statements so made. On cross-examination witness admitted that he could read, and that he understood the contract in a way.

Livingston testified that Jordan said that the man had told him to come and see witness, and that there would not be anything credited. Jordan would sell for cash, and he was to report once a week, and send in to the company. Witness then said he would sign it, because it would be a cash deal, and no chance to lose anything. Had it not been for the information conveyed through Jordan, he would not have signed the contract. At no time did he agree that there might be a change in the method of sale. He read the contract two or three times before he signed it. There was one point that caused him to sign the contract. That was the following clause: "He further agrees to pay said company for all goods purchased under this contract the current wholesale prices of such goods by remitting in cash each week to said company not less than 50 per cent. of the cash receipts." That 50 per cent. clause was what caused him to sign the contract.

On the other hand, Denton, the field manager, denied making the statements attributed to him by Jordan and Moore, but did admit that the company would require Jordan to settle every week. F. W. Whitehouse, who represented the company in Jefferson county, testified that he came to see Jordan, and told him the way he handled the business; that he never told Jordan to put merchandise out on time; and that he had no authority from the company to tell him that.

This is not a case where it is claimed that the signatures of the guarantors were obtained by fraud. No confidential relations existed between the parties. Appellant's agent did not take advantage of appellees in any way. He did not misrepresent or misread the contents of the contract, or resort to any device to prevent appellees from reading the contract. On the contrary, they read the contract, but claimed that a particular provision was omitted therefrom by fraud or mistake. It must not be overlooked that reformation is purely an equitable remedy, Pickrell & Craig Co. v. Castleman Blakemore Co., 174 Ky. 1, 191 S. W. 680; and that, in such case, the verdict of a jury on an issue out of chancery is purely advisory. Southeastern Land Co. v. Jonnard, 198 Ky. 504, 249 S. W. 789. Moreover, an executed contract will not be reformed on the ground of fraud or mistake, unless the evidence be clear and convincing, or such as to establish the fraud or mistake beyond reasonable controversy. Evans v. Stapleton, 201 Ky. 716, 258 S. W. 295. Not only are the statements attributed to Denton denied by him, but there is no evidence whatever that the parties intended to incorporate such representations in the contract.

Indeed, Livingston seems to have relied on the contract itself, and not on any representations. In the circumstances, it hardly can be said that the evidence of fraud or mistake is clear and convincing. On the contrary, we are persuaded that Livingston and Moore executed the precise contract which they intended to execute, and that nothing was omitted therefrom by fraud or mistake. At most, their evidence merely tends to show that they possibly relied on a contemporaneous oral promise, alleged to have been made by Denton on behalf of appellant, and which appellant did not keep. The rule on this subject is that, where there is no fraud or mistake in the preparation of an instrument, and it appears, as here,

716

that the parties signing understood its language and purport, it cannot be reformed on the faith of a contemporaneous oral promise, which was not kept. 34 Cyc. 922; Smith v. Rust, 112 Ill. App. 84. In the circumstances, the chancellor should have refused reformation, and have rendered judgment against Livingston and Moore for the sum of $477.97.

Though in his testimony Jordan bases his defense on the ground that the company stated that they would not require him to put goods out on credit, and afterwards required him to do so, it is not claimed that this provision was omitted from the contract by fraud or mistake. Not only so, but the evidence fails to disclose that he sustained any loss by reason of the fact that he was required to put the goods out on credit. In the circumstances, he neither pleaded nor proved any defense to the action. On the contrary, the case is simply one where he received the goods, agreed to pay for them, and failed to do so. Judgment should have gone against him for the sum of $477.97.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.