## LANDON MAPES *et al.*

*v.*

## EDWARD SCOTT *et al.*

1. NATIONAL BANK—*right to acquire real estate in payment of debts.*[*] A bank organized under the National Banking law may acquire title to real estate, even though incumbered, if honestly done, for the purpose of securing a debt due it, and it may do this by taking a conveyance directly, or by sale under process of law. If the purpose is to speculate in real estate, under the form or pretense of obtaining satisfaction of a previous debt, it is forbidden by law.

2. Where commission merchants in St. Louis were indebted to a National bank in the sum of $6500, on drafts drawn upon them and accepted, which the bank had discounted in its usual course of business, and, to secure such indebtedness, transferred to the bank a note of $20,000 on another party, secured by a deed of trust upon real estate subject to further liens, and such other party made a deed of the property to the bank in payment of the sum due from him, the bank agreeing to discharge the other liens on the same, it was *held*, that the transaction was not forbidden by either the letter or spirit of the Banking law.

WRIT OF ERROR to the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

Mr. OSCAR A. DE LEUW, and Messrs. EPLER & CALLON, for the plaintiffs in error.

Messrs. DUMMER, BROWN & RUSSELL, and Mr. J. T. SPRINGER, for the defendants in error.

---

[*] See, also, *Worcester National Bank* v. *Cheeney*, 87 Ill. 602.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

This is ejectment, brought in the circuit court, by plaintiffs in error, against defendants in error, wherein judgment was rendered for defendants.

The property involved is a mill and its site. Before 1868, the title was in plaintiffs.

On November 21, 1868, plaintiffs, being in possession, made a deed of trust to Dummer & Kirby, conveying this property to secure the payment, first, of $5116.67 to Murray McConnel, and next, $20,000 to Scott Brothers, of St. Louis, for which their note, of same date, was given, payable in instalments of $5000 each, the first on 21st of June, 1869, and $5000 yearly thereafter for three years. This $20,000 was more than the amount actually owing to Scott Brothers by Mapes & Co., but it was to be reduced by certain credits to which Mapes & Co. were entitled, for sales already made by Scott Brothers, and for which account of sales was to be rendered by Scott Brothers, and credited on the note. The amount of such credits is not definitely shown, but the proof tends to show that the real debt was much less than the amount stated on the face of the note. The $20,000 note and this deed of trust were transferred, by delivery, soon after, to the First National Bank of Jacksonville.

On the 31st of July, 1869, plaintiffs in error conveyed to the bank the property, by a general warranty deed, and the bank conveyed the property to Sylvester Moore.

Defendants are in possession, and claim title under Moore by conveyance from him.

Plaintiffs claim that no title passed from them by virtue of their deed to the bank, for they insist that the bank was incapable, under its charter, (the General Banking law,) of taking, holding or conveying real estate, under the facts of this case.

It was shown, by the proofs, that, for some time before November, 1868, Mapes & Co. were manufacturers of flour, near Jacksonville, Ill.; that Scott Brothers were commission

merchants at St. Louis, and that a business had been carried on for the sale of flour in St. Louis, in which these firms and the bank were actors. By an arrangement between the three parties, Mapes & Co., when they shipped flour to St. Louis, took the shipping bills to the bank and drew on Scott Brothers for the price of the flour, the bank cashed the drafts and sent them to St. Louis for acceptance and payment by Scott Brothers. Shortly before December 8, 1868, Scott Brothers, being in embarrassed circumstances, permitted certain of these drafts, after acceptance, to go to protest for non-payment. On demand of the bank, Scott Brothers had an accounting with the bank as to these unpaid drafts, and gave their note to the bank, on December 8, 1868, for $7500, and, as collateral security for the payment of the same, delivered to the bank the $20,000 note of Mapes & Co., (indorsed in blank,) and the deed of trust.

About the last of July, 1869, (Scott Brothers having paid only $1000 of this $7500,) the property in question was conveyed by the plaintiffs to the bank, in satisfaction of the $20,000 note, the bank assuming the payment of the incumbrance to McConnel, and, also, assuming the payment of certain mechanic liens upon the property for about $2000, of which it appears the bank officers had no knowledge until about this time. At this time, Scott Brothers were insolvent, and Mapes & Co. were in straitened circumstances. This was also a satisfaction of the $7500 note. About these facts there seems no dispute. The only contradiction in the evidence is this: Plaintiffs give evidence tending to prove that when the drafts in question were cashed by the bank, it was under an agreement that Mapes & Co. should not be held thereon as drawers, but the bank was to rely solely upon Scott Brothers for acceptance and payment. This, the defendants deny, and give evidence tending to prove that it was not so. The weight of the evidence on this point seems to be with defendants. In the view we take of this case, this question is not material.

The act of Congress on this subject provides, that "a

National banking association may purchase, hold and convey real estate for the following purposes, and for no others:  *  *  *;  third, such as shall be conveyed to it in satisfaction of debts previously contracted in the course of its dealings."

There can be no reasonable question that the debt of Scott Brothers on their note of $7500 was a debt to the bank "previously contracted in the course of its dealings." That debt was contracted by Scott Brothers when they accepted the drafts which afterwards went to protest,—even if we assume that Mapes & Co. did not also contract to pay the same debt by drawing the drafts.

On the 31st of July, 1869, $6500 of that previously contracted debt remained unsatisfied, and the bank had the lawful authority to accept real estate in satisfaction of that debt. The transfer of the note and trust deed by Scott Brothers to the bank was, in substance, a request of Scott & Brothers to Mapes & Co. to pay that debt. Under such request, the bank had lawful authority to accept the conveyance from the plaintiffs for that purpose. We perceive no difference between the legal effect of this transaction and that of a conveyance of this property to Scott Brothers in satisfaction of the real amount due upon the $20,000 note, and a subsequent conveyance of the same property by Scott Brothers to the bank in satisfaction of their debt to the bank.

The making of the deed of July 31, 1869, to the bank, in its legal effect, satisfied the $20,000 note, and, also, the $7500 note. In cancelling the latter, the bank acted for itself. In cancelling the former, the bank acted as the representative of Scott Brothers, and its warrant for so doing was found in the assignment of the $20,000 note.

When the apparent reason for permitting such banks to "purchase, hold and convey" real estate for certain purposes, and for no other, is considered, it will be seen that this transaction is within the spirit, as well as the letter, of the law.

The funds of the bank are not to be locked up in real estate investments, for that would hazard the interests of its stock-

holders and creditors, and impair its capacity for serving the commerce of the country by doing a legitimate banking business; but this limitation is not to tie the hands of the bank, so as to prevent any business transaction in real estate, had for the purpose of protecting it, its stockholders or creditors, from loss on debts owing to it, and contracted in the course of its legitimate business as a bank. Hence, to accept real estate mortgages to secure such debts, or to accept real estate in satisfaction of such debts, is permitted, either by voluntary sale to it or by sales on judicial process.

Nor is it forbidden, by either the letter or the spirit of the law, to make such purchase, for such purpose, of real estate which is incumbered. In such case, the purpose of the transaction must be kept in view. If the real purpose of such purchase is to save a debt previously contracted in the course of its legitimate business, such purchase is lawful. If the purpose of the purchase is to speculate in real estate, under the form or pretense of attaining the satisfaction of a previous debt, such purchase, it is conceived, is forbidden by both the letter and spirit of the statute. Where the amount of the debt satisfied by such a purchase is very small, and the amount to be paid to discharge the incumbrances is very large, such fact may well be considered in ascertaining the real purpose of the transaction, and might tend strongly to show an unlawful purpose.

In the case at bar, there is no ground of suspicion that the bank officers were moved by any motive other than to save the doubtful debt on the $7500 note, and accomplish its satisfaction.

The judgment of the circuit court must be affirmed.

*Judgment affirmed.*