MISSOURI STATE LIFE INS. CO. v. LAKELAND STAR-TELE-GRAM, *et al.*

149 So. 597.
Division B.
Opinion Filed July 13, 1933.

*Norman S. Stone* and *Frank Hursey,* for Appellant;
*Edwards & Marchant,* for Appellee.

BUFORD, J.—In this case the appellant, who was complainant in the court below, filed bill to foreclose a certain mortgage constituting a first lien on the property embraced in the mortgage. Charles I. Dwiggins of Lakeland, Florida, as Liquidator for Lakeland State Bank & Trust Company, a banking corporation under the laws of Florida, was made a party defendant. Lakeland Star-Telegram was the mortgagor.

It was alleged in the bill that:

"X. That under date of the .............. day of August, A. D. 1927, the said Lakeland Star-Telegram Company, by its good and sufficient warranty deed, granted, sold and conveyed to the State Bank of Lakeland, a banking corporation under the laws of the State of Florida, the property encumbered by Complainant's mortgage. That said warranty deed, among other things, recited that said deed was given subject to Complainant's mortgage which the grantee, The State Bank of Lakeland, assumed and agreed to pay. That said The State Bank of Lakeland accepted said warranty deed, which was recorded on December 16th, A. D. 1927, in Deed Book 382, at page 102, of the Public Records of Polk County, Florida. That by virtue of the aforesaid recital in said warranty deed and its acceptance thereof, said The State Bank of Lakeland became and was primarily liable to complainant for the payment of the aggregate sums mentioned in its mortgage sought to be foreclosed herein and the notes secured thereby. That said The State Bank of Lakeland had actual and constructive notice of Complainant's said mortgage deed and that by reason thereof, any right, title or interest held or claimed by said The State Bank of Lakeland in or to the property encumbered by Complainant's said mortgage, is subject, subordinate and inferior to Complainant's said mortgage and to the lien thereof and the Complainant's rights in the premises.

"XI. That thereafter, said The State Bank of Lakeland ceased to function and all the assets and property, both real and personal, tangible and intangible, of and belonging to, said The State Bank of Lakeland, together with all its liabilities, debts and obligations, whether matured or unmatured, was taken over, assumed and absorbed by the said Lakeland State Bank & Trust Company, a banking corporation under the laws of the State of Florida, and the stockholders of said The State Bank of Lakeland surrendered up

their stock and were released from any liability thereunder. That because of said transaction the said Lakeland State Bank & Trust Company became, was and is the legal successor to, and liable for all the obligations, debts, and liabilities of said The State Bank of Lakeland. That the said Lakeland State Bank & Trust Company as legal successor to said The State Bank of Lakeland, is liable to complainant for the aggregate sums mentioned in Complainant's mortgage sought to be foreclosed herein, and the notes secured thereby."

Motion was made by the Liquidator to strike certain parts of the bill of complaint included within the above quoted part of the bill wherein it is alleged "which the grantee, The State Bank of Lakeland, assumed and agreed to pay," and "that by virtue of the aforesaid recital in the said warranty deed and its acceptance thereof, said The State Bank of Lakeland became and was primarily liable to complainant for the payment of the aggregate sums mentioned in its mortgage sought to be foreclosed herein and the notes secured thereby," and the following:

"That the said Lakeland State Bank & Trust Company as legal successor to said The State Bank of Lakeland is liable to complainant for the aggregate sums mentioned in complainant's mortgage sought to be foreclosed herein, and the notes secured thereby."

The Court entered an order granting the motion to strike the above quoted allegations from the bill of complaint and from that order this appeal is taken.

The question presented for our determination is whether or not the assumption of the mortgage indebtedness by The State Bank of Lakeland in accepting a deed from the mortgagor containing the assumption clause was *ultra vires* and void.

The question presented here is not whether or not the deed to the Bank is void, but whether or not the Bank could obligate itself to pay a debt as part of the consideration passing to the grantor for the conveyance of the land to the Bank. Section 4137 R. G. S., 6068 C. G. L., enumerates special powers of every banking company and provides that "it may purchase, hold and convey real estate for the following purposes and no other:

"1. Such as may be necessary for its immediate accommodation in the transaction of its business.

"2. Such as shall be conveyed to it in satisfaction of debts previously contracted in the course of its dealing.

"3. Such as it shall purchase at sale under judgments, decree or mortgages taken by or assigned to the company or shall purchase to secure debts due to it."

In Cottondale State Bank v. Oskamp Nolting Co., 64 Fla. 36, 59 Sou. 566, it was held:

"A bank is authorized to lend its money but not its credit. Johnson Bros. Co. v. Charlottsville Nat. Bank, 3 Hughes (U. S. C. C) 657; National Bank of Commerce v. Atkinson, 55 Fed. Rep. 465; Commercial Nat. Bank v. Pirie, 82 Fed. Rep. 799; Norton v. Derry Nat. Bank, 61 N. H. 589; Morse on Banks and Banking, Sec. 65."

While not directly in point, the opinion in the case of Citizens Bank & Trust Company v. Mabry, 102 Fla. 1084, 136 Sou. 714, may be said to throw some light on the question here involved. It that case we held:

"When a contract is expressly prohibited by law, no court of justice will entertain an action upon it, or upon any asserted rights growing out of it. And the reason is apparent; for to permit this would be for the law to aid in its own undoing. Where the contamination reaches it destroys. The principle to be extracted from all the cases is

that the law will not lend its support to a claim founded on its own violation.

"Courts will take notice of, their own motion, of illegal contracts which come before them for adjudication, and will leave the parties where they placed themselves."

It is true that in Luria v. Bank of Coral Gables, filed July 14, 1932, reported 142 Sou. 901, we said:

"Realizing that the law should apply to all alike, we, therefore, are disposed to put such bank cases as are similar to the instant case in a class or 'category' to themselves, and hold that the deed to the Coral Gables Bank is not void. If it is not void, it follows that the plaintiff had the right under the rule stated in recent decisions of this Court to enforce the agreement of the Bank of Coral Gables to pay the debt secured by the mortgages held by the plaintiff, provided there is no other reason why it should not be enforced."

This, however, was not necessary to a disposition of that case, because in that case it was held that the conveyance there made to a State Bank was made without the knowledge or consent of the Bank and that there was no agreement upon the part of the Bank to assume the mortgage and that neither had there been any ratification of such assumption. In that case we also said:

"In Lassiter & Co. v. Taylor, 99 Fla. 819, 128 Sou. 14, 69 A. L. R. 689, we quoted with approval language of the Supreme Court of California in Berka v. Woodward, 125 Cal. 119, 57 P. 779, 45 L. R. A. 420, 73 Am. St. Rep. 31, to the effect that, when a contract is expressly prohibited by law no court of justice will entertain an action upon it, or upon any asserted acts growing out of it."

We think it could not be successfully contended that subsection 3 of Section 4137 R. G. S., 6068 C. G. L., authorizes a bank to assume a pre-existing obligation as a part of the

consideration for which it acquires title to real estate, although the balance of that consideration may be the satisfaction of a debt due to the bank.

If this were permissible, then a bank having an indebtedness of $1,000 due to it could in satisfaction of that debt take a conveyance of the title toj land in the name of the bank and as a part of the consideration for such conveyance could assume the payment of a mortgage debt existing and which the real estate is pledged to secure in any amount. In other words, it would be to allow the Bank to speculate wildly in real estate. If the bank may assume and agree to pay a mortgage by accepting a deed with the conventional assumption of payment the mortgage debt clause included therein, it must be conceded that it would become liable in a suit at law for the payment of the amount of the indebtedness assumed, to the great and irreparable damage to both its stockholders and depositors. The learned Chancellor in the order granting motion to strike, from which this appeal is taken, said:

"It occurs to the Court that while the modern tendency of the courts might be, as stated by one of the eminent authorities on *ultra vires,* toward the elimination of the defense of *ultra vires* in the case of wholly or partially executed contracts, that nevertheless the United States Supreme Court Rule is preferable to be established as the law in this State with reference to banking institutions, if no other corporations, and that while there are third parties in the case of other corporations who may be as innocent as the stockholders of the corporation, that nevertheless in the case of banks there are not only the stockholders of the bank to be considered as against third parties dealing with the bank in undisclosed *ultra vires* actions, but there are the great mass of depositors themselves to be considered, who place their money in these corporations, not as an invest-

ment, but as a depository under the control of the State regulated by the State, and held out by the. State to be a restricted organization for the protection of depositors, and especially supervised and controlled by the State, and it is quite clear that not only does this appear to be the better rule, for the protection of innocent parties, because such a contract if enforceable in the amount involved in this suit would be enforceable if the amount were ten thousand times as great and consequently take up all of the assets of the bank, or practically all of them, to the exclusion of depositors who might thereby come to hold only a small percentage of the total claims against a bank."

Now, to adopt the rule that the assumption clause contained in the deed of conveyance was *ultra vires* as to the Bank injures no one. Without that clause in the deed the deed was made necessarily subject to the prior mortgage and the security of the prior mortgage was not affected by the conveyance. The mortgagee would have all the security and all the right of action to enforce the payment of its mortgage debt which obtained in his behalf prior to the conveyance. The mortgagor, being indebted to the prior mortgagee, and also to the Bank, cancelled his obligation to the Bank by the conveyance of the property and if that transaction left him and the property still liable for the original debt to the prior mortgagee he stood in the same position in which he stood prior to the conveyance to the Bank. So neither the mortgagor nor the prior mortgagee were hurt, nor either of their positions made more burdensome by reason of the conveyance. On the other hand, should we hold that the Bank could assume and agree to pay a prior mortgage indebtedness we would necessarily hold that it could assume the payment of a prior mortgage indebtedness in any amount when acquiring the title to real estate in settlement of a debt due to the Bank, regardless of how

small that debt might be, bearing in mind that such an assumption on the part of the Bank would make it liable in a suit at law for the full amount of the indebtedness assumed, regardless of the value of the real estate involved, and without the necessity of the payee of the obligation resorting to foreclosure of his mortgage to enforce the payment of his debt.

Our statute above referred to was intended for the protection of depositors and of the public and to prohibit banks from speculating in real estate. If the defense of *ultra vires* is not sustained in a case like this, then it is clear that all a bank is required to do to evade the purposes of the law and to enter into real estate speculation is, first, to loan an insignificant sum on a second or third mortgage on real estate and then when the loan falls due, which might by the contract be made one day, thirty days or at any other time later, take title to the real estate and assume the payment of prior mortgages embracing the same real estate and thereby pledge its credit far in excess of its assets, as well as far in excess of the obligations which it may lawfully assume. Such contracts would be repugnant to the statutes and violate public policy.

We agree with the Chancellor that what is recognized as the United States Supreme Court Rule, which holds that *ultra vires* contracts of this character are generally not enforceable and that the defense of *ultra vires* may be pleaded is the preferable one to be established in this State with reference to banking institutions. The adoption of such rule leaves all the parties as they were before the purported assumption by the Bank occurred.

We must also bear in mind that this suit is against a liquidator who is the agent of the bank, its stockholders and its depositors and is bound to protect the interest of each, and to hold that this purported assumption was a valid

and binding obligation would be to allow the mortgagor, complainant below in this suit, to participate in the funds of the bank, to which it had contributed nothing.

To the extent that the opinion and judgment in this case may appear to be in conflict with statements contained in Luria v. Bank of Coral Gables, such statements are now overruled.

For the reasons stated, the order of the Chancellor should be affirmed and it is so ordered.

Affirmed.

DAVIS, C. J., and WHITFIELD, and TERRELL, J. J., concur.

ELLIS, J., dissents.

ELLIS, J. (dissenting).—I do not regard Sec. 6068 C. G. L. as providing any hard and fast rule on the question discussed. See Chapter 13576, '29. A measure of discretion was evidently provided for in view of which the Act discussed in the opinion is not necessarily *ultra vires*.