## Louisville Joint Stock Land Bank v. Ezell.
(Decided March 17, 1936).

368

H. W. LINTON for appellant.

C. H. BUSH and JOHN C. DUFFY for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON— Affirming.

On July 3, 1922, V. M. Acree and wife executed and delivered to the Louisville Joint Stock Land Bank a promissory note for $15,000, payable in 66 semiannual payments of $525 each, interest included, on April 1st, and October 1st of each year,. until the year 1955, and secured the note by a mortgage on a 308-acre tract of land in Christian county. Under the mortgage, the mortgagee had the option to preciptiate the collection of the whole note in the event any payment was not made when due. In the following year, Acree sold the. farm to A. T. Ezell, who, with the knowledge and consent of the mortgagee, assumed the payment of the mortgage debt. On April 24, 1924, Ezell and wife conveyed the land to W. D. Rose, who not only assumed the mortgage debt in the deed, but executed a writing addressed to the Louisville Joint Stock Land Bank reciting that he had assumed payment of the loan, accompanied by a statement signed by Ezell authorizing the bank to mail payment notices and correspondence regarding the loans to Rose. In the year 1925, Rose sold the land to J. W. Spiceland, who assumed the mortgage indebtedness, and later gave a second and third mortgage on the land. During the year 1925 Spiceland died, and his administrator brought suit under section 428, Civil Code of Practice, to sell the farm and settle the estate. The bank set. up its lien, and alleged that there had been no default in the installments. The land was sold under a judgment providing that the purchaser should assume the three mortgage debts. Mrs. Spiceland, wife of J. W. Spiceland, who became the purchaser, assigned her bid to Tucker & Bell, to whom the commissioner conveyed the land in March, 1926. The installment pay-

ments were made by Tucker & Bell until the year 1928, when they began to fall behind.

W. R. Ledford, the first of 1928 or 1929, entered into a written contract with the Louisville Joint Stock Land Bank by which he rented the land for one year. Each year thereafter, for four years, he operated the farm under the original contract. At the instigation of the Louisville Joint Stock Land Bank, W. R. Ledford caused a deed to be made by Tucker & Bell to his brother, J. G. Ledford. In this deed he did not assume the payment of the Louisville Joint Stock Land Bank's mortgage debt against the land. W. R. Ledford testified that the deed did not mean anything except possession. It was to keep Tucker & Bell from interfering. After the execution of the deed to J. C. Ledford, W. R. Ledford placed him in the possession of the land who farmed it under W. R. Ledford's contract with the Louisville Joint Stock Land Bank from January 2, 1929, until the bank, under precipitating clause of the original mortgage and note, declared the whole indebtedness due. Though the deed was made to J. G. Ledford, he declared he did not buy it; that he entered on the land under his brother's contract, agreeing to build fences and make improvements which he did, the bank paying the expenses. He cultivated the land for one-third of the crop as rent for the years 1929, 1930, and 1931, and was farming it at the time he testified herein. The Louisville Joint Stock Land Bank never asked him for a payment on the mortgage debt, and he never obligated himself to pay it and never made any payment on it. At the time the deed was made by Tucker & Bell in his name, he did not agree to pay anything for the land; he just permitted them to make the deed in his name. He was not obligated in any way about the farm. The only agreement he ever made with the bank was to pay it one-third of the crops. It appears that the bank credited as a payment each year on its semiannual installment of the note, now in suit, by the proceeds of one-third of the crops produced on the land by J. G. Ledford.

It is also shown that after the interest on the bank's debt became due, it extended the time of its payment by the acceptance of a mortgage on the crops produced on the land, to secure it, subject to a mortgage

of another bank's debt secured by the same mortgage. And at the time it did so, the original mortgage to secure the debt of the Louisville Joint Stock Land Bank included the rents, issues, and profits of the land embraced therein during the life of the mortgage.

It is insisted by Ezell that such actions on the part of the bank relieved him of all liability as an intermediate grantee, though, by acceptance of a deed to the land, he assumed the payment of its mortgage debt.

It is generally ruled that "a vendee of real estate who assumes payment of the mortgage debt thereon is liable as principal therefor." Gray et al. v. Gilliam, 166 Ky. 194, 179 S. W. 22; White v. Upton, 255 Ky. 562, 74 S. W. (2d) 924; Venable's Ex'x v. Thompson, 216 Ky. 721, 288 S. W. 669; Insley v. Webb, Adm'x, 122 Wash. 98, 209 P. 1093, 41 A. L. R. 274. And by subsequent dealings between the mortgagee and an antecedent or a subsequent grantee or the mortgagor, the obligation of the intermediate grantee may be so changed as to discharge the intermediate grantee, though he had assumed the payment of the mortgage debt, of personal liability to the mortgagee, wholly, or at least, pro tanto. See annotation to Insley v. Webb, 41 A. L. R. 278. The contrary is regarded as the minority rule. See same Annotation, page 285. According to the weight of authority, it is an established rule, if, after a conveyance of the mortgaged property, the mortgagee releases part or all of the same from the lien, or for a consideration extends time of payment, without the consent of the intermediate grantee, the latter is discharged, wholly, or at least, to the value of the property released.

In such case, whilst an intermediate grantee, as is Ezell, who assumed the payment of the debt, stands in the position of principal, the mortgagee is not bound to recognize that relationship, and if he recognizes him as surety by his subsequent dealings with an antecedent or a subsequent grantee, or the mortgagor, he is bound thereby and cannot thereafter change this relationship without the consent of the intermediate grantee to his detriment.

The Louisville Joint Stock Land Bank assumed, according to the evidence, the ownership of the mort-

gaged property, rented it for part of the crops for a period of years, during which time the renter permitted it to become out of repair and it greatly depreciated in value. Having assumed ownership of the mortgaged property and controlled it by and through its tenant, this new relationship between it and its tenant, in possession of the mortgaged property was such a disregard of the rights of Ezell as operated to discharge him from personal liability for the mortgage debt. The renting the land from year to year was the equivalent to extending payment of its mortgage debt for that period of time, during which Ezell was naturally thereby deprived of the right to resort to a remedy to relieve himself of liability or to enforce the mortgage for the payment of the debt. The yearly rental contract inevitably placed the bank in the position of owner of the land, which was entirely inconsistent with its right to hold Ezell liable as principal or even as surety for its debt.

Also, was the taking by it of a second mortgage on the crops grown and produced on the land to secure the payment of the interest due on its debt. The taking of this second mortgage was the equivalent to extending the time of payment of its entire debt during the life of the second mortgage. It also operated as a surrender of the lien embraced in the original mortgage on the rents, issues, and profits to the extent of the other bank's debt which the Louisville Joint Stock Land Bank, by provision in the second mortgage, consented should be a first lien on the crops produced on the land. Such actions on the part of the bank were without the knowledge or consent of Ezell. In the circumstances, the bank not only disregarded Ezell's rights as principal, but as surety, for its mortgage debt. Such actions on its part operated to discharge him from all liability for its debt. See Annotation to Insley v. Webb, 41 A. L. R. 277.

Wherefore, the judgment is affirmed.

The whole court sitting.