## Kentucky Joint Stock Land Bank of Lexington v. Farmers Exchange Bank of Millersburg et al.

(Decided June 24, 1938.)

528

WM. H. HAYS for appellant.

GEO. BATTERTON and I. B. ROSS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On February 12, 1923, A. J. Ritchie and wife of Nicholas county, Kentucky, borrowed from the appellant and plaintiff below, Kentucky Joint Stock Land Bank of Lexington, Kentucky, the sum of $20,000, evidenced by notes of the borrowers extending over a period of years and payable semi-annually in stipulated amounts with interest from date. To secure them the makers gave a mortgage to plaintiff on about 340 acres of land in Nicholas county, Kentucky, which was immediately recorded in the county clerk's office of that county. Shortly thereafter, the mortgagors (Ritchies) borrowed from the appellee and a defendant below, Deposit Bank of Carlisle, the sum of $4,283.75, and also borrowed the further sum of $3,309 from the Farmers Bank of Millersburg, Kentucky, for each of which amounts they executed their notes to the respective lenders and gave them as security therefor a second mortgage on the same tract of land. The borrowers met their installments of principal and interest as they became due to plaintiff, but it does not appear whether they did so as to the two banks which were the owners of a second lien upon the mortgaged property. However, on March 3, 1926, the Ritchies conveyed the land outright to the two banks, holding the second mortgage "In consideration of the parties of the second part (the vendees) assuming to pay and paying the mortgage indebtedness of the first party (the Ritchies) owing to the Kentucky Joint Stock Land Bank of Lexington, Kentucky, evidenced by a mortgage upon the land hereinafter described, and the further consideration of the cancellation of the balance of the mortgage

indebtedness due from the first party to the parties of the second part.''

Not quite two years thereafter (December 3, 1927) the Farmers Bank of Millersburg, Kentucky, conveyed its one-half undivided interest in the land to one McIntyre and on April 11, 1929, he and his joint owner, the Deposit Bank of Carlisle, conveyed the land to E. A. Campbell, who held the title at the time of the filing of this equity action in the Nicholas circuit court on March 21, 1934, by plaintiff against the Ritchies and all of the subsequent vendees who had assumed the payment of plaintiff's indebtedness, including the two banks. In that action plaintiff sought to recover a personal judgment against the makers of the notes held by it—as well as against all subsequent vendees who had assumed payment of its indebtedness—and to foreclose its lien upon the mortgaged land. None of the defendants resisted the prayer of plaintiff's petition, except the Deposit Bank of Carlisle and its co-defendant and (co-appellee) Farmers Exchange Bank of Millersburg—the latter being a reorganization of the Farmers Bank of Millersburg, which was one of the intermediate vendees of the mortgaged property as well as assumers of the payment of plaintiff's debt—the reorganized bank having taken over all of the assets of its predecessor the Farmers Bank of Millersburg and assumed all of its obligations.

The two appellees in their separate answers interposed—in common—five separate defenses to the recovery of a personal judgment by plaintiff for the balance of its indebtedness against them, and which, with interest, amounted to nearly as much as plaintiff's original debt. Those defenses were: (1) That the assumption of plaintiff's debt by the two banks at the time the land was conveyed to them jointly was an ultra vires act on their part and, therefore, unenforceable against them; (2) that default was made by the Ritchies in the payment of their note maturing March 1, 1933, and plaintiff failed to exercise its right to precipitate the payment of all of the indebtedness due it and neglected to then file its action to collect its debt and enforce its lien against the land and the crop grown by the borrowers on the farm for that year, and that by such failure it released all subsequent vendees who assumed the payment of its debt, since—as it was also contended —such vendee-assumer occupied toward plaintiff only

the relationship of surety for the debt secured by its lien; (3) that in consenting to the assumption of its debt by the last vendee, E. A. Campbell, there was created a novation of plaintiff's debt whereby the answering banks were discharged; (4) that appellant had agreed with Campbell, after he became the owner of the land, to accept a conveyance of it from him in full satisfaction of its lien, but that it refused to carry out that agreement and by such refusal it released the answering defendants from all obligation to it; (5) that the two banks who assumed plaintiff's debt after they purchased the land in lien failed to report to the state banking commissioner the obligation they so assumed and failed to make a record of such assumption on their books and which "was contrary to public policy and void." The Farmers Exchange Bank interposed an additional, or (6), defense to the effect that upon the reorganization of the Farmers Bank of Millersburg, its predecessor, the liability of that bank—created by its assumption of plaintiff's debt—was not shown on its books, and that when it agreed to assume all liabilities of its predecessor it intended thereby to assume only the obligations shown on the books of its predecessor, and that the obligation here sought to be imposed upon it—not appearing upon its predecessor's books—was not assumed by it.

Plaintiff filed demurrers to each separate defense and to the answers as a whole. The court sustained plaintiff's demurrers to defenses (3), (5) and (6), but it overruled them as to defenses (1), (2) and (4), with objections and exceptions by plaintiff. Replies to the paragraphs left in the answers, after the court had acted on plaintiff's demurrers thereto, were filed, in which it denied the material facts of the remaining paragraphs in the answers and affirmatively pleaded, in extenso, the facts with reference to the assumption by the appellees of its indebtedness, including a plea of estoppel by them to rely on the ultra vires defense. Demurrers by the answering defendants to plaintiff's reply, or replies, were sustained by the court, and that portion of the petition seeking personal judgment against appellees was dismissed, to reverse which plaintiff prosecutes this appeal.

Early in the action—and considerably before the judgment appealed from was rendered—personal judgments were taken against all of the defendants who had

not filed answers, and an order for the sale of the land was made without exception by anyone. It was executed by the Master Commissioner of the court and the land was appraised at $8,475. At the sale plaintiff became the purchaser for the amount of $13,071.19, an advance over the appraisement of $13.50 per acre. The sale was duly reported, and no exceptions were filed thereto and it was later confirmed—followed by a conveyance to plaintiff by the Master Commissioner. Such was the status of affairs at the time of the rendering of the judgment appealed from. Following its rendition, and after the appeal was prosecuted, plaintiff (appellant) sold the land—having held the title to it for something like two years—to one Lewis M. Crosley for a total consideration in excess over its bid sufficient to extinguish the deficiency judgment that it sought to recover against appellee; but, whether it will ever collect that consideration from its vendee, Crosley, is problematical, since its payment is spread over a long period of years, and whether his installment promises will be promptly or at all met is uncertain. But, whether they will or will not be met by him, appellees, since this appeal was taken, have filed in this court their pleading—setting up the fact of the sale to him—pursuant to section 757 of our Civil Code of Practice—and entered motion to dismiss the appeal, upon the ground that the profit realized by plaintiff in its sale to Crosley satisfied the unpaid balance of its debt after crediting the net proceeds of its bid thereon, and which wiped out the deficiency that it now seeks to recover from appellees. That motion was passed to the merits of the case and is the first question for determination.

The contention made by appellees in their motion to dismiss the appeal is indeed a novel one. It readily will be conceded that if the parties to the appeal had—following the rendition of the judgment appealed from —settled and compromised the controverted matters forming the subject matter of the litigation, then the procedure authorized by the section of the Code referred to would be available to the party litigant entitled to it; but no intimation, much less contention, is here made that any such settlement has ever been agreed to so as to authorize the invoking of the remedy furnished by that section. In support of the motion learned counsel for appellees with much vigor and apparent sincerity argue that the mortgage property con-

stitutes the primary fund for the payment of the debt thereby secured. From that premise they insist that it remains in lien for the debt it secured until the title to it becomes vested in a stranger to the debt, although the security may have been exhausted by a sale under foreclosure, or enforcement proceeding of the lien, resulting in a sale of the property, which sale was confirmed and followed by a deed to the purchaser in all cases when the purchaser was the owner of the original lien secured debt. But the argument is non-convincing —especially so under the unqualified facts of this case. There might be qualifying facts and circumstances whereby one who may be liable for the originally secured debt might still have some remaining equity in the mortgaged property, even after sale; but whether so or not, there are certainly no such qualifying facts appearing in this record, even by the remotest intimation. On the contrary, the record presents only the usual case where a court ordered the sale of mortgaged property, and which order was executed by the court's commissioner in the usual and ordinary manner as prescribed by the law. The owner of the debt, secured by the lien ordered to be enforced, became the purchaser at an advance price of more than fifty per cent above the appraised value of the property. The bidder later received a deed pursuant to the order of the court, and credited the indebtedness by the net amount of its bid. Under all the law that has been cited to us, and under all that we have been able to find—as well as in accordance with logic, justice and common sense—the sold security became exhausted upon its sale, in the circumstances and conditions outlined, and the vendee of the court's commissioner (appellant) obtained an unencumbered title, and which consequence follows whether the purchaser is the holder of the secured debt —and consequently the plaintiff in the proceedings wherein the mortgaged property was sold—or whether he be a stranger to the debt.

It is conceded by counsel for appellees that if a stranger had bought the property under the same circumstances the obligors on the original debt secured by the mortgage on the property would be personally liable for any deficiency amount that the net proceeds of the sale of the mortgaged property failed to pay, and it requires a mind of more discriminating ability than we are able to command to detect any difference between

a purchase by the plaintiff in the enforcement proceedings and one made by a stranger to such proceedings. In each case the purchaser—without some agreement or conduct on his part creating a different result—obtains the title to the judicially sold property free from the lien created by the enforced mortgage, notwithstanding the net proceeds of the sale were insufficient to extinguish the mortgage debt. Likewise, in each case all primary obligors for the payment of the entire debt are still responsible for such deficit. See Jones on Mortgages, 8th edition, section 2206, wherein this fundamental statement of the law is found: "The sum for which the mortgaged premises were sold must, so long as the sale stands, be taken, as between the parties to the suit, as a conclusive test of their value; and the amount of the deficiency for which a decree shall be entered is ascertained accordingly and not by taking the market value at the time, in case this happens to exceed the amount obtained at the sale."

The learned author supports the text by many cases from the highest courts of various states—all of which are in accord therewith, with no dissent therefrom.

Appellees' counsel, however, cite the case of Union Joint Stock Land Bank v. Knox County et al., 20 Tenn. App. 273, 97 S. W. (2d) 842, an opinion by the Court of Appeals of Tennessee, as holding to the contrary. But the limits, appropriate for an opinion like this, forbid our pointing out the clearly distinguishing facts of that case from those appearing in this one. When so compared that (Tennessee) opinion furnishes no material or controlling support whatever for the unqualified application of the principle contended for. Without consuming further time or space we unhesitatingly conclude that the motion to dismiss the appeal should be and it is overruled, and which brings us to a consideration of defenses (1), (2) and (4) supra, which the trial court sustained and dismissed plaintiff's petition. They will be considered in the order named.

1. At the date when the obligation assuming the payment of plaintiff's debt was entered into by the two state banks, sections 579 and 582 of the 1930 edition of Carroll's Kentucky Statutes were in force. They have since been amended, increasing the powers of state banks in investing their assets and which was done by the legislature at its regular 1934 session, which en-

larged expressed powers appear in the same two sections as contained in Baldwin's 1936 Revision of Carroll's Kentucky Statutes. Section 579, before such amendments, authorized domestically incorporated banks "to exercise, subject to law, such powers as may be necessary to carry on the business of banking by discounting and negotiating notes, drafts, bills of exchange, and other evidences of debt, and purchasing bonds, receiving deposits, and allowing interest thereon, buying and selling exchange, coin and bullion, and lending money on personal or real security, as provided in this article." Other express powers are enumerated in that section, but which are not immediately pertinent to the question involved.

Section 582, before being so amended, expressly forbid the employment of the assets of a locally incorporated bank "in any enterprise or business, except as provided in section 579," but it expressly provided that such banks "may acquire title to and hold such real estate as may be necessary for the transaction of its legitimate business, and for a period not longer than ten years such other real estate as shall be conveyed to it in satisfaction of debts previously contracted in the course of its business, or that it may purchase under a judgment in its favor."

It is conceded by learned counsel for appellees that a corporation may lawfully exercise all express authority conferred upon it by the laws of its creation, plus all such necessarily implied powers that may be required in the execution of the expressly conferred ones. That proposition is not only conceded by learned counsel, but is universally adopted and approved by all courts and text writers. Necessarily, therefore, a bank undoubtedly has the right to exercise reasonable business discretion and judgment in the collection of a note due it and forming a part of its assets. It may likewise—as is expressly conferred by the statutes supra—invest its cash in any of the properties mentioned therein. It is plainly authorized therein to secure its paper by accepting mortgages on, either personal property or real estate, and it may privately purchase any such mortgaged property, or at decretal sale when it becomes necessary to sell it in order to enforce its lien. Undoubtedly the bank, as the owners of such security—and in the exercise of good business judgment—would possess the implied authority and right to do any and

all things necessary for the protection of its security, and to realize the collection of debts due it to the fullest extent possible. Good business judgment frequently dictates, in such circumstances, that the owner of the collateral security should purchase the property in lien for his debt in order to vest him with full and complete management of it, and to agree to pay and assume the demanded consideration in order to occupy the advantageous position of absolute owner and controller of the property. If such demanded consideration—or a part of it—should consist in assuming the payment of a prior and superior encumbrance, it would seem to logically follow that the bank would possess the implied right to assume the payment of such prior encumbrance.

But we are not alone dependent upon our interpretation of the two sections supra of our statutes in order to arrive at a correct conclusion of the legal issue involved in defense (1) now under consideration. On page 177 of 91 A. L. R. is the beginning of an annotation upon the subject of "Assumption of mortgage or lien by bank or other corporation as ultra vires." On page 182 of that volume is the beginning of subdivision III of that annotation, which subdivision is directed exclusively to "Power to acquire land as including power to assume mortgage thereon." The beginning of the discussion in that subdivision (III) is devoted to what would necessarily appear to be the logical conclusion, as we have hereinbefore intimated, to the effect that (as therein expressed) "In accordance with this natural and reasonable conclusion, the weight of authority is clearly in favor of the view that, where it is within the power of a bank or other corporation to acquire certain real estate, it may, as a part of the transaction, assume and agree to pay a mortgage thereon." The annotator then cites in support of such implied power (being the same herein disputed by appellees) the cases of Woods Investment Co. v. Palmer, 8 Colo. App. 132, 45 P. 237; Mapes v. Scott, 88 Ill. 352; Sherry v. Denn, 8 Blackf., Ind., 542; Nippolt v. Farmers' & M. State Bank, 186 Minn. 325, 243 N. W. 136; Lincoln Joint Stock Land Bank v. Bexten, 125 Neb. 310, 250 N. W. 84; Texas Court in Panhandle Nat. Bank v. Emery, 78 Tex. 498, 15 S. W. 23; Desdemona State Bank & Trust Co. v. Streety, Tex. Civ. App., 250 S. W. 286; National Equitable Soc. v. Alexander, Tex. Civ. App. 220 S. W. 184; Kosse Nat. Bank v. Derben, Tex. Civ. App., 36 S. W.

(2d) 295; Williams v. Merchants' Nat. Bank, D. C., 42 F. (2d) 243; and Zantzinger v. Gunton, 19 Wall. 32, 22 L. Ed. 96.

It would be most elucidating to take excerpts—not only from the annotation referred to—but also from the cases cited by the annotator. That course, however, would lengthen the opinion beyond due bounds, and we will content ourselves with inserting only a few, beginning with the Colorado case of Woods Investment Co. v. Palmer, wherein it is said (45 P. page 238): "The general power to purchase real estate necessarily includes the power to purchase incumbered real estate, and the power to purchase incumbered real estate as necessarily includes the power to assume the incumbrance."

Attention might also be called to the fact, hereinbefore referred to and admitted by appellees' counsel, that the two state banks possessed express power and authority to have purchased outright the debt sued on by plaintiff, and to have paid therefor cash, or, possibly, its duly executed paper. If they had done so, they would then hold both the first and second liens upon the property, and the question of their superiority would have thereby become merged so far as they were concerned. If that had been done, it is conceded that they could have taken a deed from the mortgagor, conveying to them the absolute title to the mortgaged property, in consideration of the surrender and cancellation of all of the indebtedness secured by the mortgages. Instead of pursuing that course—which it is conceded might have been done under express authority—they pursued the one herein outlined, and which put them in the exact position that would have been occupied had they pursued the indicated course, for which it is admitted they possessed full power and authority.

The annotation referred to follows the opinion of the Florida Supreme Court in the case of Missouri State Life Insurance Company v. Lakeland Star-Telegram Co., reported on page 173 of 91 A. L. R., and in 111 Fla. 416, 149 So. 597, which sustains appellees' ultra vires defense; but two members of the court (consisting of a total membership of five) dissented therefrom, and the learned annotator in courteous terms strenuously criticizes the majority opinion—saying among other things that it "represents the only real authority in favor of the view that a bank having the power to purchase real estate has no power to assume

an encumbrance thereon." The arguments put forth in the majority opinion are then taken up and clearly shown to be fallacious and wholly unsupportable. Finally, it is said with reference to the majority opinion of that court that it "is opposed to both the weight of authority and the better line of reasoning. It is irreconcilable with other cases on the subject, and the reasons invoked by the court in support of the decision are neither convincing nor satisfactory."

It results that the court erred in not overruling the demurrer of appellant to the ultra vires defense. It also erred, as we conclude, in sustaining the demurrer of appellees to the paragraph of appellant's reply pleading an estoppel to rely on that defense, as is clearly pointed out in the same annotation supra, beginning on page 187 of the volume in which it appears. Compare also on this point the cases of Liberty Coal Mining Co. v. Frankel Coal Co., 206 Ky. 647, 268 S. W. 280, and Wilson, Banking Commissioner, v. Louisville Trust Company, 242 Ky. 432, 46 S. W. (2d) 767. But, the question of estoppel becomes immaterial when the defense to which it is pleaded is not available.

2. Defense (2), which was upheld by the trial court, is bottomed upon the theory that appellees, by assuming to pay appellant's debt in the deed conveying the mortgaged land to them, thereby became only secondarily liable to appellant as mortgagee of the land they purchased, and were thereby clothed with the rights and obligations of sureties only. From that premise, it is strenuously argued that the failure of appellant to proceed to enforce its lien, following the first default, by asserting its right of precipitation, caused it to lose its lien on the crop that was grown on the mortgaged premises during the year 1933, and which, counsel argue, had the effect to release their clients who, as they insist, were appellant's sureties only. If their conclusion as to the suretyship relation of their clients should be admitted (but which is not, as will hereinafter appear), it would then at least be a mooted question as to whether their exoneration from liability would be entire, or only pro tanto to the extent of the lost security of which they complain. But, however that may be, counsel's entire theory is incorrect, since this court with others, as well as leading text writers, declare the rule to be that "in assuming the payment of the debt, the purchaser of the land becomes primarily liable and a

principal along with the mortgagor, so that the mortgagee, in the absence of a release, may choose to enforce his claim against either or both and have a personal decree against them." The excerpt is taken from the case of White v. Upton, 255 Ky. 562, 74 S. W. (2d) 924, 926. Other cases are cited in that opinion to the same effect, and the text of Jones on Mortgages, section 940, page 310, unqualifiedly approves the excerpt from the White opinion as being the correct principle.

The chief case relied on in support of the contention that the relationship of appellees to the appellant as mortgagee of the property they purchased—and in which they agreed to assume mortgagee's debt—was only that of surety instead of principal, is Louisville Joint Stock Land Bank v. Ezell, 263 Ky. 367, 92 S. W. (2d) 349. That case expressly approves the general rule above stated,—that a vendee-assumer of the payment of a prior encumbrance on the property purchased becomes a principal obligor to the mortgagee as the holder of the security—but facts appeared in that case which we held were sufficient to not only change and alter such primary relationship to that of surety, but likewise sufficient to release Ezell entirely as such created surety. It is unnecessary for us to recite such facts, as the reading of the opinion will disclose them. It is only sufficient to say that they are absent from this record.

But, independently of all of the foregoing, learned counsel for appellees cite us to no case so penalizing the owner of the debt if he should fail to exercise his right of precipitation upon the instant it accrues, and to thereby create the right of any one obligated for the debt to become in any manner released, if such right of precipitation is not promptly exercised. It follows that the court also erred in upholding this defense.

4. Defense (4), as will be seen, is based upon the contention that appellant, before filing its foreclosure proceeding, agreed to accept from Campbell (the last owner of the land before it was sold under the decretal sale) a conveyance of the mortgaged property to it in full satisfaction of its debt. That defense, however, was denied in an appropriate paragraph of appellant's reply following the overruling of its demurrer to this defense made in appellees' answers, but the court sustained a demurrer to that denial. However, the defense

as pleaded in the answer was wholly defective, even if it could be made an available one in any event. In effect, it was and is in its essence a demand for specific performance, and for it to have any effect whatever in any state of case, it should be made to appear by proper pleading that the agreement relied on was of the nature and kind that the court would specifically enforce in an action for that purpose. In the circumstances, the attempt to rely on this defense was wholly ineffectual, even if defendant had not denied it in its reply to which, as we have seen, the court sustained appellees' demurrers.

The other defenses to which the court sustained appellant's demurrer (Nos. 3, 5 and 6) will not be discussed by us further than to say generally that we think the court was correct in so holding. But, if otherwise, then no cross-appeal has been prosecuted by appellees from the rulings of the trial court thereon, and which puts it beyond our authority to consider such rulings, even if some or all of them are meritorious, but which we conclude otherwise.

Wherefore, for the reasons stated, the judgment is reversed with directions to set it aside, and for further proceedings consistent with this opinion.

The whole court sitting.