**Harold Dean PEARMAN, Appellant,**

v.

**WEST POINT NATIONAL BANK, Appellee.**

**No. 93–CA–1193–MR.**

Court of Appeals of Kentucky.

Nov. 11, 1994.

Douglas E. Miller, Radcliff, for appellant.

Edward K. Black, Louisville, for appellee.

Before EMBERTON, JOHNSTONE and MILLER, JJ.

MILLER, Judge:

Harold Dean Pearman brings this appeal from a judgment and order of sale of real property dated March 9, 1993. We reverse.

The facts are clear. On February 25, 1992, West Point National Bank (the bank) brought the instant action against Pearman to enforce a judgment lien on real property. Ky.Rev.Stat. (KRS) 426.720. The lien resulted from a deficiency judgment in a foreclosure proceeding (Civil Action No. 91–CI–305) upon unrelated real property in the Hardin Circuit Court.

In the instant action, Pearman attacks the validity of the deficiency judgment. In this regard, it becomes necessary to examine the circumstances surrounding the foreclosure. In that action, a judgment and order of sale was entered on May 14, 1991. It concerned real property owned by Pearman located on North Wilson Road in Radcliff, Hardin County, Kentucky. The judgment was for $44,-271.03, plus accrued interest. The property was appraised at a fair market value of $45,-000.00. KRS 426.520. The realty was sold "at the courthouse door" by the master commissioner on July 12, 1991, with the bank being the sole bidder and purchaser at $31,-000.00—approximately two-thirds of the appraised value. The obvious purpose in bidding that amount was to avoid the equity of redemption provided in KRS 426.530. The master commissioner's report of sale was filed on the same day (July 12) with the clerk serving notice on July 15, 1991. Ky.R.Civ.P. (CR) 53.06. No exceptions were taken. The order and judgment confirming the sale and directing the master commissioner's deed was entered July 30, 1991. Therein, a deficiency was granted against Pearman in a sum exceeding $16,000.00. KRS 426.005. On the day before the deficiency judgment was entered (July 29), the bank contracted for sale of the property with certain third parties (Steve and Kevan Chung) for the appraisal of $45,000.00,[1] a sum in excess of Pearman's total indebtedness. After receiving the deed from the master commissioner, the bank conveyed the property to the Chungs.[2]

In defense of the present action, Pearman argues that his obligation to the bank was extinguished by the bank's action in purchasing and reselling the property, thus there is no deficiency and the judgment should not be allowed to stand. The circuit court commented that "[t]he bid at 2/3rds value will not pay off the indebtedness leaving a 'deficiency.' However, the Bank now owns the property which it can resell for its true market value (which will be at least the amount they originally loaned on it or more as banks

seldom will loan 100% of its value). And that is what happened in this case. Even before the Court had confirmed the sale, the Bank had resold it for its true market value. (An appraised value of $45,000.00). In reality, there was no 'deficiency.'" The circuit court further noted that it has not been faced with a case where "a lending institution has sought to collect a 'deficiency judgment' wherein it was able to resell the property for the amount of the indebtedness." Nevertheless, on March 9, 1993, the circuit court upheld the deficiency judgment and entered the judgment and order of sale from which this appeal is taken.

Pearman contends that the circuit court committed reversible error by recognizing the validity of the deficiency judgment. We agree.

The circuit court relied upon *Kentucky Joint Stock Land Bank v. Farmers Exchange Bank*, 274 Ky. 525, 119 S.W.2d 873, 877 (1938), wherein the status of a mortgagee who purchased the collateral at a foreclosure sale was addressed. The Court stated:

There might be *qualifying facts and circumstances* whereby one who may be liable for the originally secured debt might still have some remaining equity in the mortgaged property, even after sale; but whether so or not, there are certainly no such qualifying facts appearing in this record, even by the remotest intimation. On the contrary, the record presents only the usual case where a court ordered the sale of mortgaged property, and which order was executed by the court's commissioner in the usual and ordinary manner as prescribed by the law. The owner of the debt, secured by the lien ordered to be enforced, became the purchaser at an advanced price of more than fifty per cent above the appraised value of the property. The bidder later received a deed pursuant to the order of the court, and credited the indebtedness by the net amount of its bid. Under all the law that has been cited to us, and under all that we have been able to find—as well as in accordance with logic,

---

1. Steve and Kevan Chung paid $10,000.00 in cash, and the bank financed the balance.

2. The master commissioner's deed to the bank bore the date of July 30, 1991, and showed a recordation date of August 14, 1991.

justice and common sense—the sold security became exhausted upon its sale, in the circumstances and conditions outlined, and the vendee of the court's commissioner ... obtained an unencumbered title, and which consequence follows whether the purchaser is the holder of the secured debt—and consequently the plaintiff in the proceedings wherein the mortgaged property was sold—or whether he be a stranger to the debt.

... In each case the purchaser—without some agreement or *conduct on his part creating a different result*—obtains the title to the judicially sold property free from the lien created by the enforced mortgage, notwithstanding the net proceeds of the sale were insufficient to extinguish the mortgage debt. (Emphases added.)

▪ We do not perceive, as did the trial court, that this holding is fatal to Pearman's position. We construe *Kentucky Joint Stock* as holding that generally a mortgagee who purchases at his own judicial sale takes title free from any equity by one liable on the secured debt, except when "qualifying facts and circumstances" exist. *Id.* We believe there exists qualifying facts and circumstances in the instant action, such being that the bank contracted with third parties (the Chungs) to sell the mortgaged property *during the foreclosure action* and, in fact, ultimately sold same for an amount which would have wholly satisfied the debt owed by Pearman. More succinctly, we view the qualifying and distinguishing feature of this action as being that the bank contracted to sell the mortgaged property while the mortgagor-mortgagee relationship was yet in full force and effect. Such becomes a pivotal and consequential fact owing to the implied covenant of good faith and fair dealing in the mortgage contract.

In *Ranier v. Mount Sterling Nat'l Bank*, Ky., 812 S.W.2d 154, 156 (1991), the Court observed that "[i]n every contract, there is an implied covenant of good faith and fair dealing." We are bound to conclude that the mortgage contract in question contains such a covenant and that neither the loan delinquency nor the foreclosure process impaired its validity. *Cf.* Annot., 55 A.L.R.4th 1026 (1987). We believe the covenant imposed upon the bank the duty to act in a bona fide [3] manner throughout the foreclosure proceedings. It may reasonably be assumed that for an appreciable time before the contract of sale was entered into, the bank was aware of the Chungs' interest in Pearman's property and of their willingness to purchase it for $45,000.00. In any event, its failure to adopt a course that would have liquidated its customer's debt in the entirety and choosing instead to seize an advantageous business opportunity was a breach of its good faith obligation. Under these circumstances, we believe the bank should not be allowed to profit. We conclude that the bank's breach of its duty of good faith and fair dealing resulted in effacement of the deficiency.

▪ The bank contends that Pearman's attack on the deficiency judgment is foreclosed in that an appeal should have been taken from the original foreclosure judgment (Civil Action No. 91–CI–305). CR 73.02. However, this issue was not raised at trial level and, therefore, was not properly preserved for appellate review. *See Regional Jail Auth. v. Tackett,* Ky., 770 S.W.2d 225 (1989). Nevertheless, we do not consider this proceeding a re-adjudication of the original foreclosure action. In this instance, the doctrine of *res judicata* has no application. We view this proceeding as a collateral attack upon the foreclosure judgment which has been "discharged," "satisfied," or for "equitable grounds" should not be allowed to stand. CR 62.02 and 62.03.

For the foregoing reasons, the Judgment and Order of the Hardin Circuit Court is reversed.

All concur.

---

3. *Black's Law Dictionary* 177 (6th ed. 1990) defines "bona fide" as being "[i]n or with good faith; honestly, openly, and sincerely; without deceit or fraud. ... Truly; actually; without simulation or pretense. Innocently; in the attitude of trust and confidence; without notice of fraud, etc. Real, actual, genuine, and not feigned." (Citations omitted.)